Cheshire County Probate Court
No. 85-551

*In re* ESTATE OF MABEL M. WARD

December 30, 1986

*Bell, Falk & Norton*, of Keene (*Ernest L. Bell* and *Mary Louise Caffrey* on the brief, and *John C. Norton* orally), for the plaintiff, Robert M. Farr, Administrator w/w/a.

*Kfoury & Elliot*, of Manchester (*Charla B. Bizios* on the brief, and *Paul R. Kfoury* orally), for the defendant, William H. Watson, Executor.

THAYER, J. The primary issues presented for our consideration in this appeal involve probate court jurisdiction over fiduciary

accountings for estate assets, the applicability of the doctrine of election of remedies as applied to proceedings brought in both the superior and probate courts, the validity of a probate court's assessment of legal fees against a losing party for intransigent behavior when the court did not rule for the prevailing party on all claims, and whether the interest charged a fiduciary for misappropriated funds should run from the date of the misappropriation or from the date that a demand was first made.

The defendant, Attorney William Watson, appeals from a decree of the Cheshire County Probate Court (*Cushing*, J.), ordering him to account for funds he wrongfully appropriated from Mabel Ward and for fiduciary fees he improperly charged Ward while supervising her finances under a general power of attorney. The court also ordered the defendant to reimburse plaintiff for attorney's fees incurred during the probate proceedings. We affirm.

The relevant facts are as follows. On June 6, 1978, Mabel M. Ward appointed William H. Watson to supervise her financial matters pursuant to a general power of attorney. The instrument creating the power of attorney permitted Watson, *inter alia*, to withdraw funds from Ward's bank accounts, to sell stocks and bonds, and to prepare tax returns. On August 2, 1983, the probate court found Ward incapable of making certain basic decisions such as where she should live or whether she should accept or refuse medical treatment. In light of her deteriorating mental condition, the court appointed her cousin, Robert M. Farr, as her personal guardian. Mr. Watson remained in charge of her finances. Upon Farr's appointment as guardian, he demanded an accounting of Mabel Ward's financial matters.

On November 2, 1983, Mabel Ward died. On November 8, 1983, the court appointed Douglas K. Watson, the son of William H. Watson, to take an inventory of the estate. On the same date, the elder Watson was appointed executor. In keeping with Farr's earlier request, William Watson and Farr performed an inventory of Ward's safe deposit box in December, 1983. On January 26, 1984, Douglas K. Watson filed the inventory of the Ward estate.

The inventory did not include property that was, in fact, part of Mabel Ward's estate. Robert Farr then brought a petition seeking removal of William Watson as executor. On July 23, 1984, the court granted Farr's request, and appointed Farr as administrator w/w/a. The court also ordered William Watson to file a final account by August 31, 1984. Watson did so in September, 1984.

Farr filed a motion objecting to the defendant's final account, citing losses and irregularities. Hearings on that motion commenced in

the fall of 1984. At the conclusion of the hearings, the probate court entered a decree. The court found that while William Watson was operating under a general power of attorney, he wrongfully appropriated $116,820 of funds from Mabel Ward's bank accounts and converted those funds to his own use. The court's decree ordered William Watson to account for the monies as well as the interest lost thereon. The court also found that $8575 of legal fees Watson charged Ward were for services that were of no value or benefit to her. William Watson was ordered to reimburse the estate for those charges and the accrued interest. Lastly, the court found that Watson's intransigence in providing information to the plaintiff and the court caused unnecessarily extensive, contested hearings. As a result, the court ordered him to pay the plaintiff's legal expenses.

The defendant makes the following contentions on appeal: (1) the sum of $116,820 which William Watson appropriated did not constitute a debt for purposes of RSA 554:14 and, thus, was not subject to probate court jurisdiction under RSA 547:3; (2) the fees for valueless services charged Mabel Ward by Watson in his fiduciary capacity were also not debts subject to accounting under probate court administration; (3) the plaintiff waived probate court jurisdiction by bringing a superior court action against Watson; (4) the probate court erred in ordering William Watson to pay Farr's attorney's fees, where the assessment of fees was allegedly in retaliation for Watson's exercise of his fifth amendment rights in refusing to testify during the accounting proceedings; (5) the probate court similarly erred in assessing the plaintiff's legal fees against Watson, when the plaintiff did not prevail on all claims; and (6) the interest lost on funds Watson misappropriated was not a debt of the estate and, thus, not within the probate court's jurisdiction.

The defendant's first two contentions address the initial power of the probate court to adjudicate the plaintiff's claims against William Watson. The defendant does not, of course, concede that the plaintiff's claims are meritorious; however, the defendant has also not presented an argument on appeal that the probate court erred in finding that William Watson was, in fact, liable to the Ward estate for funds allegedly misappropriated. Instead, the import of the defendant's initial arguments is that even if William Watson was liable for various defalcations, the appropriate forum is not the probate court. Thus, our primary inquiry does not concern the validity of the claims asserted against William Watson, but rather the jurisdictional capacity of the probate court.

RSA 547:3 establishes the basic parameters of probate court jurisdiction:

"A judge, in his county, has jurisdiction of the probate of wills, of the granting of administration and of all matters and things of probate jurisdiction relating to the sale, settlement and final distribution of estates of deceased persons, and shall have the power, concurrent with the superior court, to interpret and construct wills and testamentary trusts."

RSA chapter 554 details the specific accounting requirements in the administration and settlement of estates under probate court jurisdiction. The particular provision that is central to this appeal reads as follows:

"A debt due from the administrator to the estate shall be assets and accounted for as other debts. If such debt is specifically bequeathed to him his right thereto shall be the same as that of any legatee; and the judge, after due notice, shall liquidate and adjust all debts and claims due to the administrator, or from him to the estate."

RSA 554:14. *See* RSA 553:1, :2.

The first specific issue we focus on involves the $116,820 William Watson allegedly misappropriated from Mabel Ward. The historical basis of the predecessor to RSA 554:14 was to abolish the common law rule that a debt to the testator is extinguished except as against creditors if the debtor is appointed executor. *Judge of Probate v. Sulloway*, 68 N.H. 511, 513–14, 44 A. 720, 721 (1896). Thus, RSA 554:14 effectively covers an executor's debts to the testator that were incurred before the testator's death. Under the circumstances of the current case, the dispositive question is whether misappropriated funds can properly be characterized as debts. If so, the probate court would most assuredly possess the jurisdictional capacity to force William Watson to account for the monies as "debt[s] due from the administrator to the estate . . . ." RSA 554:14.

The defendant asserts that the $116,820 he misappropriated from Mabel Ward is not a debt. The argument is that debts are only fixed, liquidated amounts created by a contract. Thus, the administrator's claim is, in reality, an unliquidated tort claim of conversion in the garb of a debt action.

The defendant advances a particular form of debt, one created by a contract, and attempts to inflate this narrow species of the debt genus into the only valid definition. We note, for example, that *Corpus Juris Secundum* defines debt as follows:

"Debt is a liquidated demand, a liquidated money demand, or a sum payable in respect of a liquidated

money demand, as opposed to unliquidated damages. In the main, the distinguishing characteristic of such an obligation is that it is for a sum certain, or a sum readily reducible to certainty, hence it has been held that to constitute a debt, there must be owing a sum which is ascertained, certain, definite, fixed, precise, and specific, or which is capable of ascertainment, or of being readily reduced to a certainty, without the intervention of a jury. In the common understanding of mankind, however, the uncertainty of the sum due does not render it the less a debt; and hence, as used in some statutes, the term debt has been held to include unliquidated damages."

26 C.J.S. *Debt*, at 6 (1956).

Although our probate statutes do not define debt, we point out the following statutory definition of debt from New Hampshire's enactment of the Uniform Fraudulent Conveyances Act (hereinafter U.F.C.A.): "debt includes any legal liability, whether matured, liquidated, or unliquidated, absolute, fixed or contingent." RSA 545:1.

Our reading of the C.J.S. definition of debt, with reference to the U.F.C.A., is that no automatic or mechanical test exists for determining what is or is not a debt. We draw particular attention, for purposes of this case, to that portion of the C.J.S. quotation which speaks in terms of an amount readily reducible to a sum certain. The $116,820 William Watson misappropriated from Mabel Ward's bank accounts was readily reducible to certainty in two respects.

First, the record is replete with detailed bank record evidence. This evidence demonstrates that on approximately three dozen occasions when Watson withdrew funds from the Ward accounts, he made contemporaneous deposits into his own account in the same amount as the withdrawn funds. The bank records reveal not only the bald transfer of funds from Ward's accounts to his own, but also the exact amounts involved.

 Second, and for the defendant most fatal, the final amended account filed by William Watson listed the sum of $116,820 as "unexplained withdrawals." The fact that William Watson himself fixed a figure on the disputed funds rendered the amount more than readily reducible to certainty and, thus, satisfactorily liquidated. We hold that, for the reasons stated above, the "unexplained withdrawals" of $116,820 did constitute a debt of the executor due the estate, and that the probate court's assertion of jurisdiction over the debt was proper under RSA 554:14.

The second specific issue we consider pertains to the validity of the probate court's order that William Watson reimburse the estate

for fees charged while supervising Mabel Ward's finances. The defendant's contention at this juncture employs a legal theory similar to that of the first argument: legal fees William Watson improperly charged Ward prior to her death were not debts of the estate, and consequently, the probate court did not possess jurisdiction to order Watson to account for the fees charged.

██ One of the considerations in determining the reasonableness of attorney's fees is the benefit bestowed on the client. *In re Bergeron Estate*, 117 N.H. 963, 967, 380 A.2d 678, 681 (1977). The probate court judge did not consider William Watson's services to be of any benefit when Watson had behaved in a manner completely antithetical to his fiduciary duties and responsibilities. As usual, we will not disturb findings of fact made below unless those determinations were clearly erroneous. *Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981).

██ The voluminous record contains more than sufficient evidence for the probate judge to have concluded that Watson's "services" had in fact not benefited Mabel Ward. William Watson's improper fee charges constituted misappropriation of funds to the same degree as his outright withdrawals from Ward's bank accounts. Fees obtained for worthless services are no more than the improper disposition of funds under a certain pretense of legitimacy. Again, we observe that William Watson himself placed a dollar value on the fees he charged Mabel Ward. Once the probate judge had properly determined that the services were of no value or benefit to Ward, the specific extent of Watson's debt was readily ascertainable. We hold that RSA 554:14 applies to the attorney's fees charged by William Watson prior to Ward's death. Accordingly, the probate court judge was correct in ordering Watson to account for those sums.

██ The defendant's next jurisdictional argument rests on the doctrine of the election of remedies. Specifically, the defendant asserts that because the plaintiff has also filed suit against William Watson in the superior court, the plaintiff is barred from proceeding against him in the probate court. This court has held that "the formal doctrine of election of remedies should be confined to cases where the plaintiff may be unjustly enriched or the defendant has actually been misled by the plaintiff's conduct or the result is otherwise inequitable or *res judicata* can be applied. (citation omitted)." *Ricker v. Matthews*, 94 N.H. 313, 317–18, 53 A.2d 196, 199 (1947).

██ None of these elements applies in the instant case. First, the plaintiff does not stand to be unjustly enriched by the probate

court's decree. Unjust enrichment would only become relevant if the plaintiff attempted to collect twice on the same cause of action. Second, the plaintiff has not misled the defendant by petitioning for an attachment in the superior court. The defendant was fully aware of the proceedings against him in both courts. The plaintiff's superior court action simply reflects the fact that the probate court does not have the capacity to grant petitions for attachment. R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 562, at 325 (1984). In that respect, the plaintiff's superior court action was supplemental to his probate court action, not mutually exclusive of it. Lastly, *res judicata* does not bar the probate court proceeding because no adjudication has occurred in the superior court.

The next general issue we consider is the validity of the probate court's order assessing plaintiff's legal fees against the defendant. The defendant makes two allied arguments in opposition to the probate court's decree. First, the probate court charged the defendant with the plaintiff's legal fees in order to retaliate against the defendant for exercising his privilege against self-incrimination at the hearings. Second, even if the probate judge did not consider the defendant's refusal to take the stand in deciding to charge Watson with Farr's legal expenses, the court still erred in awarding attorney's fees for claims that the court denied.

The defendant's first argument has no basis in fact whatsoever. An examination of the record reveals not the slightest possible shred of evidence from which one could conclude that ulterior motives had prompted the probate judge's assessment. Not even the defendant's brief is able to refer us to evidence in support of the defendant's contention. The fact is that Mr. Watson had not properly complied with his accounting duties, or acceded to the plaintiff's requests for information on the financial status of the Ward estate.

The defendant's second argument on the issue of Farr's legal fees has at least some basis in fact. We begin our analysis of this argument with general observations on discovery procedure. One of the purposes of discovery is to decrease the time and expense involved in litigation. *See Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 517 A.2d 808 (1986). The party pressing a claim must have easy access to material information in order to assess the legitimacy of the claim. The fact that a cause of action may, after due investigation, prove invalid does not render the claim any less worthy of the initial discovery procedures. The defendant would have us fashion a rule whereby legal fees are awarded against intransigent defendants only to the extent of expenses incurred on prevailing claims.

12

Adoption of such a rule would only encourage obstinacy in the face of reasonable discovery requests. A party would have little to lose in embarking on a pattern of intransigence. We, thus, uphold the probate judge's decree in order to ensure the fair and speedy administration of the discovery process.

██ The last issue we consider is the defendant's contention that the probate judge's order that Watson account for interest on the funds he misappropriated represented an improper assessment of pre-judgment interest. The defendant is correct in pointing out that pre-judgment interest can only accrue from the time that suit is filed or when a demand is made. RSA 524:1-a. The question, however, is whether the charge of interest on misappropriated funds can properly be considered pre-judgment interest added onto a claim, or as part of the debt itself. We favor the latter construction. In situations involving tort claims, for example, interest accrues from the date of the suit in order to compensate the plaintiff for loss of the use of damage money while a lawsuit is pending. *Shepard v. General Motors Corporation*, 423 F.2d 406, 408 (1st Cir. 1970). The dispositive factor is that the pre-judgment sum represents the initial loss that constitutes the claim. In the context of the instant case, we are presented with a different situation. Here, the misappropriated funds were already in Ward's bank accounts and earning interest. When Watson withdrew those funds he also withdrew the ability of the money to earn interest. By misappropriating the $116,820, Watson also misappropriated the interest thereon. Thus, the lost interest was just as much a debt as the actual funds.

██ Our holding that the interest was also a debt is bolstered by prior cases in which this court has not considered interest on monies misappropriated by a fiduciary as pre-judgment interest. In *Deschenes v. Deschenes*, 109 N.H. 389, 392–93, 254 A.2d 278, 280–81 (1969), we upheld the charge of an administratrix with interest on funds she failed to distribute. The interest charge applied from the date that the first distribution should have occurred. Likewise, in *American Fidelity Co. v. Barnard*, 104 N.H. 146, 182 A.2d 471 (1962), we upheld the imposition of interest on misappropriated funds commencing from the date when the assets were misappropriated. The defendant's brief correctly states that *American Fidelity* and *Deschenes* involved individuals acting in capacities as executors, conservators, and guardians, whereas Watson was acting under a general power of attorney. For purposes of this issue, that is a distinction without a difference. One who supervises finances under a general power of attorney is still within the overall class of fiduciaries, a class that, of course, also embraces conservators, execu-

tors, and guardians. We read cases such as *American Fidelity* and *Barnard* as not limited strictly to the specific titles in question, but rather in terms of the fiduciary relationship which was breached. Any other interpretation would only exalt form over substance and lead to an undermining of the fiduciary standard applied to actions pursuant to powers of attorney.

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.