Merrimack County Probate Court
No. 86-309

## *In re* ESTATE OF MARTIN CROWLEY

July 23, 1987

*Tardif, Shapiro & Cassidy*, of Concord (*David E. Tardif* on the brief and orally), for the plaintiffs, Robert Crowley and Lucille Auclair.

*Alexander M. Lachiatto*, of Franklin, by brief and orally, for the defendant, Raymond A. Crowley.

JOHNSON, J.   This is an appeal from an order of the Merrimack County Probate Court (*Espiefs*, J.) granting the petition of Robert Crowley and Lucille Auclair to remove Raymond Crowley as executor pursuant to RSA 553:10. We affirm.

Martin A. Crowley died testate on May 27, 1983, and on June 15, 1983, his will was proved and duly admitted to probate. The testator nominated his son, Raymond A. Crowley, executor. The will provided, *inter alia*, for cancellation of all notes given the testator by his sons Richard and Raymond Crowley for the purchase of the stock and assets of the testator's trucking business, monetary bequests of $40,000 to his son Robert J. Crowley, and $10,000 each to his daughters Catherine Contingiani and Lucille Auclair. The residue was left to his children Robert, Catherine and Lucille in equal shares.

Raymond Crowley filed his first account as executor on October 18, 1984, covering the period May 27, 1983, through October 10, 1984. This account contained a claim of M. A. Crowley Trucking Company for $42,170 listed as "open account indebtedness for cash advances to or for the account of Martin A. Crowley." The executor, a 50% shareholder in the Martin A. Crowley Trucking Company, failed to designate this claim as a "private claim" of the fiduciary pursuant to Probate Court Rule 17. Evidence at trial showed that $39,500 was withdrawn from the estate by the executor and used to pay the alleged debt by purchasing vehicles and equipment for the company.

The petitioner Lucille Auclair alleged that the executor had unnecessarily and obstinately withheld a certain bank book which the testator had established in joint tenancy with her. Despite numerous demands for the passbook by Ms. Auclair, the executor did not deliver it to her until February of 1984, claiming that the delay resulted from an investigation of the decedent's intent with respect to the interlineation of Lucille's name on the passbook. The

passbook was admitted into evidence and showed no such interlineation.

On February 27, 1984, a meeting of the executor and beneficiaries took place, at which the executor proposed that the three residuary legatees, Robert, Lucille and Catherine, would receive $75,000 each, in satisfaction of their interests in the estate, with the proviso that the trucking company would get certain realty, and Raymond and Richard Crowley would assume payment of all the estate taxes. This proposal was characterized by both petitioners as "an all or nothing proposition;" that if they did not accept it, they would get nothing. The proposal was unacceptable to the petitioners, who felt that their interests in the estate should not have to subsidize the payment of taxes attributable to Raymond's and Richard's interests.

A further issue of contention concerns a Webster Lake cottage which the testator devised to all five children in equal shares. The petitioners contend that the property is being wasted by improper management and care, and that the executor and his brother are attempting to control the property for their private gain. Evidence adduced at trial showed that the executor rented the property to Richard Crowley as a year-round residence at $500 per month, over the two petitioners' objections. The cottage is currently in need of at least $1600 worth of repairs, which are being postponed. The petitioners have brought a separate petition to partition the Webster Lake premises.

On January 28, 1985, Lucille Auclair and Robert Crowley filed a petition to remove Raymond Crowley as executor. An amended petition was filed on August 2, 1985. After a two-day trial, the probate court ordered Raymond A. Crowley removed as executor, and Mr. Crowley has appealed.

This case turns on RSA 553:10, which provides:

> "If an executor or administrator, by reason of absence, or infirmity of body or mind, or by wasteful or fraudulent management in his trust, becomes unfit for the discharge thereof, or unsafe to be trusted therewith, the judge, upon due notice, may revoke the administration."

We begin our analysis by noting that the standard of review for a probate court's ruling is the same as that for a superior court or district court ruling. Thus the findings and rulings of the probate court will be sustained unless lacking in evidentiary support or tainted by an error of law. *See Burnham v. Downing*, 125 N.H. 293, 296, 480 A.2d 128, 130 (1984). The situation presented

in this case is one which justifies removing the executor pursuant to the removal provision, and we hold that the probate judge did not err in doing so. Although the probate court expressly found that the executor had not acted fraudulently, the record supports a finding of wasteful management on his part, which is sufficient to justify his removal under the statute.

In New Hampshire, statutory words and phrases are to be construed according to their common and approved meaning. RSA 21:2. "Waste," or "*devastavit,*" is the "mismanagement or a misapplication or waste of the assets of an estate by an executor or administrator . . . ." 31 AM. JUR. 2d *Executors and Administrators* § 265, at 138 (1967). It is the "wasting [of] the goods of the deceased; [the] mismanagement of the estate by which a loss occurs, . . . a breach of trust or misappropriation of assets held in a fiduciary character. . . ." BLACK'S LAW DICTIONARY 406 (5th ed. 1979). We think that in this case the executor committed waste in failing to maintain the Webster Lake property. This court has defined waste in the real property context as the failure "to make needed repairs and maintain the property." *Hanley v. Wadleigh,* 88 N.H. 174, 177, 186 A. 505, 507 (1936). The probate court found that the Webster Lake cottage is in need of at least $1600 worth of roof repairs which have not been done. Also, in early 1985, malfunctions of the heating system caused smoke damage to the cottage and contents. This constitutes injury to the remainder in the nature of waste within the meaning of the statute.

Further, it is clear that in paying the "debt" owing to his own corporation out of the assets of the estate, without complying with procedure outlined in Probate Court Rule 17, the executor misappropriated assets of the estate. Certainly misappropriation falls within the common law meaning of waste. *See In re Tolfree's Estate,* 347 Mich. 272, 287, 79 N.W.2d 629, 637 (1956). There was considerable controversy as to the nature of the "claim" which the executor unilaterally paid to the corporation of which he was a substantial shareholder. Such apparent self-dealing on the part of Raymond Crowley was inconsistent with his role as an executor. Executors are fiduciaries, *In re Estate of Ward,* 129 N.H. 4, 12, 13, 523 A.2d 28, 34 (1986), and as such must comport with "the punctilio of an honor the most sensitive." *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). This is a rigorous standard which was not met by Raymond Crowley in this case. The probate judge acted properly in removing him as executor. In view of our

holding on these waste and mismanagement issues, we need not consider the executor's other assignments of error.

*Affirmed.*

BATCHELDER and THAYER, JJ., did not sit; the others concurred.