Labrecque v. N.H.D.C.                    CV-94-576-L    04/03/95

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Carl Labrecque

    v.                                          #C-94-576-L

Paul Brodeur, Commissioner,
 Department of Corrections


**ORDER**

Currently before the court is petitioner, Carl Labrecque's

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C § 2254

(Doc. 3).  For the following reasons, the petition is denied.


BACKGROUND

In the fall of 1992, Ms. Karen Crossman met the petitioner,

Carl Labrecque, at a convenience store in Durham, New Hampshire.

Through acquaintances, Ms. Crossman learned that the petitioner

was a handyman.  Ms. Crossman obtained references from a number

of the petitioner's clients and subsequently retained the

petitioner to fix a bath tub and drain in her home in Rochester,

New Hampshire.  While the petitioner was performing these

repairs, he met Ronald Crossman, the eleven year old son of Ms.

Crossman.  The petitioner asked Ms. Crossman if her son might be

available to work, as an assistant, at local job sites.  After

some discussion, Ms. Crossman agreed to allow her son to work for

the petitioner on weekends at a wage of $8.00 a day.

The petitioner and Ronald Crossman began working together on September 12, 1992 at a residence in Somersworth, where the petitioner was replacing timbers underneath a raised garage. This project required Ronald to hammer a board into a timber while standing on a rock below the garage. While Ronald performed this task, the petitioner allegedly fondled Ronald's penis through his clothes, explaining that "it was the only place he could hold [him] without [the victim] falling."

The following weekend the petitioner and Ronald Crossman returned to the Somersworth residence to continue the job. While Ronald was standing on the same rock, hammering boards below the garage, the petitioner again allegedly fondled Ronald's penis through his clothing and "stuck his thumb up [the victim's] butt." Later that day, the petitioner assaulted Ronald for a third time while Ronald stood on the ground underneath the garage. That night, Ronald Crossman discovered blood on his underwear.

The petitioner and Ronald returned to the Somersworth residence the next week to clear debris from below the garage. On this day, the petitioner allegedly assaulted Ronald twice, once while Ronald stood below the garage and a second time while he stacked fire wood.

2

On the following two Saturdays, Ronald worked with the petitioner in the basement of a residence in Durham. On both days the petitioner allegedly fondled Ronald's penis for several minutes while the victim stood on a ladder installing insulation. At trial, Ronald testified that he did not inform anyone of these events out of fear, shame and confusion.

On the next Saturday, November 21, 1992, Ronald fell ill and Ms. Crossman informed the petitioner that her son could not go to work that weekend. Nevertheless, the petitioner arrived at the Crossman residence the following day and "begged" Ms. Crossman to permit Ronald to come to work. When she refused, the petitioner pleaded with Ronald's aunt, Ann Ryan, who also refused.

After the petitioner left, Ronald told his mother and aunt about the prior sexual assaults and they immediately contacted the local authorities. Thereafter, the petitioner was arrested and charged, pursuant to RSA 632-A:3, with felonious sexual assault of a person under 13 years of age.

Prior to trial, defense counsel filed numerous motions, including a Motion for Services other than Counsel. Specifically, the Motion for Services other than Counsel requested funds for private investigator services.

On April 5, 1993, the trial court (Mohl, J.) permitted the defense to file an ex parte offer of proof as to why the services

3

of a private investigator were necessary. On April 7, 1993, the defense filed the ex parte offer of proof, alleging, inter alia, that the eleven year old victim is "an aggressive and difficult child" and that exculpatory information "is required to piece together enough of this child's background such that the defense [can] show the jury that the State's theory that this boy was simply too scared or meek to come forward is not consistent with the images known to the Defendant." After reviewing the ex parte offer of proof, the trial court (Mohl, J.) denied the Motion for Services other than Counsel, finding that the petitioner had not "made a sufficient showing of necessity - or as much of a showing as could be expected - for purposes of retaining a private investigator."

On April 29, 1993 the jury convicted the petitioner on four counts of felonious sexual assault. On May 26, 1993, the petitioner was sentenced to 7 to 14 years in the State Prison. The petitioner appealed his conviction to the New Hampshire Supreme Court. The Supreme Court affirmed the conviction.

The petitioner now contends that his constitutional rights to due process, effective assistance of counsel and equal protection were violated when the trial court denied his request for funds to hire an investigator. The primary basis for these contentions lies with the petitioner's allegation that a

4

professional investigator was needed to explore the background of the eleven year old victim for information which could have been used to attack the boy's credibility at trial.

## DISCUSSION

In considering a petition for writ of habeas corpus, the scope of a court's review is limited. 28 U.S.C § 2254(a). The function of a federal district court is simply to determine whether a State court has detained a petitioner in violation of constitutional rights.

The federal habeas corpus statute, 28 U.S.C. § 2254, provides that federal courts accord a presumption of correctness to the factual determinations made by a state court after a hearing on the merits unless one of the following eight circumstances in 28 U.S.C. § 2254(d) is found to exist, <u>Miller v. Fenton</u>, 474 U.S. 104, 117 (1985):

    (1)  that the merits of the factual dispute were not resolved in the State court hearing;

    (2)  that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

    (3)  that the material facts were not adequately developed at the State court hearing;

    (4)  that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

Having found none of the eight factors applicable to the case at hand, the burden rests on Mr. Labrecque to establish by convincing evidence that the State court's determinations are erroneous. 28 U.S.C § 2254(d); see State v. Lewis, 129 N.H. 787, 798 (1987).

As a threshold consideration to determining whether petitioner is entitled to habeas corpus relief, petitioner requests this court to amply regard provisions of RSA 604-A:6. Succinctly, RSA 604-A:6 provides that

[i]n any criminal case in which counsel has been appointed to represent a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in his case, counsel may apply therefor to the superior court, and, upon finding that such services are necessary and that the defendant is financially unable to obtain them, the

6

court shall authorize counsel to obtain the necessary services on behalf of the defendant.

Petitioner asserts that the intendment of RSA 604-A:6 is to entitle indigents to investigative services necessary for an adequate defense at reasonable cost to the public. Further, petitioner maintains that a "trial court should not withhold authorization of funds for an investigator when the underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge. United States v. Kasto, 584 F.2d 268 (8th Cir. 1978)." Doc. 3.

In construing the terms of RSA 604-A:6 and determining whether an indigent petitioner asserts a viable argument concerning deprivation of a constitutional right to fundamental fairness under the due process standard, the court notes that the right to have access to funds to retain an investigator in New Hampshire is not absolute and lies within the sound discretion of the trial court judge. See State v. Campbell, 127 N.H. 112, 115 (1985). Further, a trial court judge may exercise his/her discretion in favor of a petitioner when a showing can be made that an investigator's assistance is necessary to insure an effective defense. See State v. Stow, 136 N.H. 598, 605 (1993); United States v. Ready, 574 F.2d 1009, 1015 (10th Cir, 1978) ("To

7

warrant a favorable exercise of that discretion, it is not enough merely to allege in general or conclusory terms that expert services would be helpful").

In discerning whether a trial court judge abused his/her discretion in denying services or funds to hire experts, a reviewing court is obligated to evaluate or consider whether:

> 1.   Petitioner's request to the court included as complete a showing of necessity for the desired services as could be expected, and
>
> 2.   The denial of funds substantially prejudiced petitioner at trial.

Lewis, 129 N.H. at 798; Stow, 136 N.H at 605.

Correspondingly, "a defendant must demonstrate by reference to the facts and circumstances of his particular case that the assistance he seeks is necessary `to insure effective preparation of [his] defense by [his] attorneys.'" Campbell, 127 N.H. at 115 (quoting Mason v. Arizona, 504 F.2d 1345, 1351 (9th Cir. 1974).

Turning attention to a review of the record in the case at hand, the court is not persuaded that the trial court judge abused his discretion in denying private investigator services to petitioner.  Apposite to this conclusion is the lack of any firm basis or reasonable premise, within petitioner's ex parte offer of proof, demonstrating or articulating necessity.  Petitioner merely maintains that an investigator might be helpful in

8

resolving conflicting information.

Furthermore, although additional investigative resources might have been a means by which to sort through conflicting statements, the ability of sifting through such issues was not within the exclusive mastery of an investigator. Rather, aware of the various conflicting statements, petitioner's lawyer was able to carefully and strategically inquire into the statements during direct and cross examination. For example, petitioner's counsel cross examined the victim's mother concerning Ronald's credibility and reputation.

> Q. Ms. Crossman, Mr. Odom asked you if your son was truthful, and your answer was he is not a liar. Is that the most that you can say about the truthfulness of your son; he is honest; he is truthful; but he is not a liar?
>
> A. And he is not a liar.
>
> Q. In fact, you have disciplined him for lying before, have you not, by putting him in the corner?
>
> A. I don't believe I punished Ronnie for lying to me.

T-II 85-86.

Finally, in addressing the issue of credibility, counsel for petitioner extensively questioned Ronald Crossman, inquiring not

9

only into Ronald's recollection of specific details of each assault, but also into specific statements made by him. Petitioner's counsel also questioned Ronald about opportunities to flee, the failure to report the assaults, and other areas involving Ronald's credibility.

Based on petitioner's counsel's ability to conduct thorough investigations and examinations of the victim and witnesses, this court opines the trial court's conclusion that petitioner has failed to make a sufficient showing that investigative services are "essential and reasonably necessary", State v. Farrow, 116 N.H. 731, 733 (1976), is supported by the evidence.

As is the case here, denial, by a court, of a petitioner's request for expert services should be upheld where the request merely suggests "optimistic hope that something helpful might turn up." Lewis, 129 N.H. at 798.

Aside from the issue of inquiring into or attacking the victim's and certain witnesses' credibility, petitioner also maintains an investigator was needed in order to determine whether the victim "has had contact with the police" or "has engaged in antisocial behavior." Ex Parte Offer of Proof of Necessity for Services other than Counsel.

Here again, such a blanket request, without sufficient articulation or basis, does not support a showing of necessity.

10

Underlying this conclusion, the court notes that the ex parte offer of proof simply stated that certain records "might contain exculpatory information" or reveal a "history of problems . . . at school or in other social settings." Id. The offer of proof did not specify any facts, pertaining to the existence of exculpatory information or reflecting a basis for suspecting social problems, which would warrant the special skills or education of an investigator. As noted in Campbell, 127 N.H. at 118, while a court "cannot expect defense counsel to indicate what an expert will find before the expert has had a chance to find it, see Williams v. Martin, 618 F.2d at 1026-27, it is reasonable to require the defense to articulate some basis beyond general hope that an expert might be helpful in trial preparation." (Emphasis added).

As a brief but relevant tangential consideration, even assuming that the trial court judge abused his exercise of discretion in denying expert or investigative services to petitioner, petitioner still would not be entitled to habeas relief. Succinctly, petitioner has failed to demonstrate or show any prejudice resulting from the trial court decision denying expert services. Interestingly, in virtually all of the areas in which petitioner maintains the services of an investigator were necessary, a review of the state court transcripts indicates that

11

the petitioner's counsel was able to "fill the void" by investigating or exploring into various inconsistencies or issues. For instance, as noted in the Memorandum in Support of Objection to Respondent's Motion for Summary Judgment (Doc. 14), petitioner's counsel

> was able to do sufficient investigation to locate and present several character witnesses for the defendant. The defense was able to bring out the defendant's good reputation for honesty and the fact that he had been married for twenty-nine years, has three children, six grandchildren and had never been arrested before. T-III 4-6. See generally T-III. He was able to depose the victim's mother and aunt. ANOA at 96

Doc. 14.

Further, the fact that the jury had the opportunity to observe the victim's demeanor and the fact the petitioner's counsel availed himself of the opportunity to impeach certain witnesses gives additional support for the conclusion that Mr. Labrecque was not substantially prejudiced by his inability to have the services of an investigator.

To recapitulate, the findings of a trial court must be "accorded a presumption of correctness." Perron v. Perrin, 742 F.2d 669, 672 (1st Cir. 1984); Sumner v. Mata, 455 U.S. 591, 592 (1982). In challenging the decision or discretion of a state trial court, a petitioner has the burden of establishing by clear and convincing evidence that the factual determinations made by a

12

State court are erroneous.  28 U.S.C § 2254(d).

In reviewing the record presented in the case at hand, this court opines Mr. Labrecque has not established by clear and convincing evidence that the trial court judge abused his discretion in denying investigative services.  Additionally, the denial or restriction of funds for an investigator did not substantially prejudice the petitioner.  This being the case, Mr. Labrecque has also failed to demonstrate, by reference to specific facts and circumstances in his case, that the inability to have investigator services denied him due process of the laws, effective assistance of counsel and equal protection of the laws. As noted in Campbell, 127 N.H. at 115,

> [i]n passing upon requests of indigent defendants for access to services of experts other than counsel it has not mattered whether the claims were grounded on the sixth or fourteenth amendments of the Constitution of the United States.  Whether a defendant has invoked equal protection, fundamental fairness for due process, or the right to services to enable his counsel to assist him effectively, an indigent defendant's access to experts has been said to lie within the sound discretion of the court.

(Citations omitted).

13

In light of the aforementioned discussion, the petition for writ of habeas corpus (Doc. 3) is denied.


_____
Martin F. Loughlin
Senior Judge


James E. Duggan, Esq.
Patrick E. Donovan, Esq.