Hillsborough County Probate Court
No. 2007-031

IN RE GUARDIANSHIP OF ROBERT D. DORSON

Argued: September 13, 2007
Opinion Issued: October 31, 2007

*Nicholas R. Aeschliman,* of Portsmouth, by brief and orally, for the petitioners.

*Sulloway & Hollis, P.L.L.C.,* of Concord (*James E. Owers* and *Kelly Ovitt Puc* on the brief, and *Mr. Owers* orally), for the respondent.

DALIANIS, J. The respondent, Peerless Insurance Company/Liberty Mutual Surety (Peerless), appeals an order of the Hillsborough County Probate Court (*Cassavechia,* J.) requiring Peerless to reimburse the estate of Robert D. Dorson $25,988.48, which represents the surcharge the court imposed upon the ward's prior guardian, Nelson Dorson. We affirm.

The record supports the following: The probate court appointed Nelson guardian over Robert's person and estate; Nelson obtained a surety bond from Peerless. In June 2004, Nelson sought permission from the court to relocate Robert to American Samoa and to borrow $90,000 from the estate; both requests were denied. Thereafter the court terminated Nelson's authority as guardian, ordered him to relinquish the estate assets to a successor guardian and directed him to file a final account within thirty days. Nelson failed to file a final account and was found in default. He departed the United States after misappropriating $137,206.11 from Robert's estate. This amount included $112,906.11 that Nelson unlawfully withdrew from one of the funds in which Robert's Hartford Life Annuity was invested. In January 2005, the court appointed the petitioners,

Gertrude Edmunds and Nicholas R. Aeschliman, successor guardians over the estate.

In December 2005, the petitioners asked the probate court to surcharge Nelson "for all amounts he . . . improperly withdr[ew] from guardianship accounts, plus all damages resulting from said withdrawals," including "lost income from the amounts improperly withdrawn."

In October 2006, the parties entered into a partial settlement, which the probate court approved, pursuant to which Peerless paid the estate $137,206.11. The parties submitted a single question for the probate court's review: What is the correct amount of interest and/or lost appreciation that Peerless should pay on the funds Nelson misappropriated from the Hartford Life Annuity? While the petitioners argued that Peerless should pay the appreciation lost on the misappropriated funds between the date Nelson took them and the date they were repaid, Peerless contended that the estate was entitled only to interest at the statutory rate. *See* RSA 336:1, II (Supp. 2007). The probate court ruled in favor of the petitioners, surcharging Nelson and requiring Peerless to pay $25,988.48, which represented the difference in the value of the annuity units when Nelson unlawfully liquidated them ($112,906.11) and when the probate court approved the partial settlement ($138,894.59). This appeal followed.

Our standard of review is statutory: "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (2007). "Consequently, we will not disturb the probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law." *In re Estate of Treloar*, 151 N.H. 460, 462 (2004) (quotation omitted).

Peerless first argues that RSA 524:1-b (2007) required the trial court to award interest at the legal rate between December 2005, when the petitioners filed their petition, and October 2006, when the court approved the partial settlement. RSA 524:1-b provides:

> In all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party . . . there shall be added . . . to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of judgment . . . .

Peerless asserts that RSA 524:1-b applies because the probate court, in this equity proceeding, made a finding of pecuniary damages to a party. Peerless contends that "[u]nder RSA 524:1-b and [RSA] 336:1, application of the statutory rate of interest to the post-writ, prejudgment loss of the use of money is mandatory." To the contrary, any surcharge imposed by

the probate court, regardless of whether it took the form of interest or lost appreciation, was part of the debt or loss to the estate and did *not* constitute prejudgment interest governed by RSA 524:1-a (2007) (pertaining to actions on debt) or RSA 524:1-b. *In re Estate of Ward*, 129 N.H. 4, 12-13 (1986).

Our decision in *In re Estate of Ward* is instructive. In that case, the executor of an estate took $116,820 from the decedent's bank accounts and converted the funds to his own use. *In re Estate of Ward*, 129 N.H. at 6-7. The executor first argued that the probate court lacked jurisdiction because the money he took did not constitute a debt to the estate and, thus, was not subject to probate court jurisdiction. *Id.* at 7-8. We held, to the contrary, that the executor's unexplained withdrawals from the estate constituted a debt of the executor to the estate. *Id.* at 9.

The executor also asserted that the interest on the funds he misappropriated constituted prejudgment interest and, therefore, the probate court erred when it calculated interest from the date the funds were misappropriated instead of from the date upon which demand was first made for their repayment. *Id.* at 12. We disagreed:

> The question, however, is whether the charge of interest on misappropriated funds can properly be considered pre-judgment interest added onto a claim, or as part of the debt itself. We favor the latter construction. In situations involving tort claims, for example, interest accrues from the date of the suit in order to compensate the plaintiff for loss of the use of damage money while a lawsuit is pending. The dispositive factor is that the pre-judgment sum represents the initial loss that constitutes the claim. In the context of the instant case, we are presented with a different situation. Here, the misappropriated funds were already in [the decedent's] bank accounts and earning interest. When [the executor] withdrew those funds he also withdrew the ability of the money to earn interest. By misappropriating the $116,820, [the executor] also misappropriated the interest thereon. Thus, the lost interest was just as much a debt as the actual funds.

*Id.* (citation omitted). Thus, we held that the probate court did not err by calculating interest from the date of the misappropriation. *Id.* at 6, 12-13.

■ Similarly, here, the funds that Nelson unlawfully withdrew from the Hartford Life Annuity were debts that he owed the estate and any surcharge that the probate court decided to impose upon Nelson, whether it took the form of interest or lost appreciation, was part of this debt, and

not an award of prejudgment interest. Accordingly, Peerless' reliance upon RSA 524:1-b is mistaken.

Peerless next asserts that the trial court unsustainably exercised its discretion by assessing a surcharge that represented the difference in the value of the units of the annuity from the date upon which they were liquidated to the date the court approved the partial settlement. We disagree.

■ "A surcharge is the equitable penalty imposed when a trustee fails to exercise the requisite standard of care and the trust suffers thereby." *In re Scheidmantel*, 868 A.2d 464, 492-93 (Pa. Super. Ct. 2005). It "is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." *In re Estate of McCool*, 131 N.H. 340, 346 (1988) (quotation omitted) (adopting Pennsylvania law). Equitable remedies are particularly within the sound discretion of the trial court. *See LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 274 (2003). We assume, without deciding, that, as Peerless contends, we review the probate court's imposition of a surcharge under our unsustainable exercise of discretion standard. *Cf. Mooney v. Nationwide Mut. Ins. Co.*, 149 N.H. 355, 357 (2003) (reviewing trial court decision to impose equitable remedy of recission and restitution under unsustainable exercise of discretion standard). We hold that the trial court did not unsustainably exercise its discretion.

Contrary to Peerless' assertions, when crafting a remedy for a trustee's breach of trust and breach of loyalty, "[t]he court is not confined to a limited list of remedies but rather will mold the relief to protect the rights of the beneficiary according to the situation involved." G. G. BOGERT & G. T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 861, at 4 (2d ed. rev. 1995). "Equity is primarily responsible for the protection of rights arising under trusts, and will provide the beneficiary with whatever remedy is necessary to protect him and recompense him for loss, in so far as this can be done without injustice to the trustee or third parties." *Id.* at 3-4. In addition to direct damages, courts may order consequential damages and punitive damages where malice or fraud is involved. *Id.* at 48-51. The court may "adapt[] its decree[] to fit the nature and gravity of the breach and the consequences to the beneficiaries and trustee." G. G. BOGERT & G. T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 543(V), at 441 (2d. ed. rev. 1993). Equity "does not always grant the same kind of relief for the same kind of wrongdoing; its object is not merely to prevent loss to the trust estate or wrongful gain by the trustee." *Id.* Rather, one of the purposes of

relief may be to deter other trustees from acting similarly in the future. *Id.* at 441-42.

In this case, the court imposed a surcharge that was designed to put the estate in the same position it would have been had Nelson not misappropriated the funds. That remedy is one of many that a beneficiary may pursue. *See* RESTATEMENT (SECOND) OF TRUSTS § 205 (1959). "When a breach of trust occurs, the beneficiary of the trust is entitled to be put in the position he would have been if no breach of fiduciary duty had been committed." *Berish v. Bornstein,* 770 N.E.2d 961, 977 (Mass. 2002) (quotation omitted); *see Matter of Wills of Jacobs,* 370 S.E.2d 860, 865 (N.C. Ct. App.) ("damages for breach of trust are designed to restore the trust to the same position it would have been had no breach occurred"), *review denied,* 373 S.E.2d 863 (N.C. 1988). Other remedies include holding the trustee liable for "any loss or depreciation in the value of the trust estate resulting from the breach of trust" or requiring the trustee to disgorge any profit that the trustee made through the breach of trust. RESTATEMENT (SECOND) OF TRUSTS, *supra* § 205; *see* RESTATEMENT (SECOND) OF TRUSTS, *supra* § 206 (remedies available under section 205 also apply where trustee breaches duty of loyalty).

Where, as in this case, "the beneficiary should seek damages on the theory of conversion, the court may award him 'appreciation damages', representing the appreciated value of the property at the time of the beneficiary's suit or judgment thereon rather than its value at the time of misappropriation." BOGERT & BOGERT, *supra* § 543(V), at 446; *see also* RESTATEMENT (SECOND) OF TRUSTS, *supra* § 208; RESTATEMENT (THIRD) OF TRUSTS PRUDENT INVESTOR RULE § 208 (1992).

For instance, in *Flagship Bank v. Reinman, Harrell, Silberhorn, Moule & Graham, P.A., et al.,* 503 So. 2d 913, 913, 916 (Fla. Dist. Ct. App. 1987), where the trustee of a land trust had negligently failed to protect the trust property from loss by tax sale, the court ruled that "[t]he beneficial interest holders are entitled to damages equaling the fair market value of the retained and lost property at the time of trial." As the court explained, "By applying the fair market value of the retained and lost property at the time of trial, the trial judge awarded damages to the beneficial interest holders which placed them in a position very similar to that which they would have been in had the promoters not fraudulently retained the property." *Flagship Bank,* 503 So. 2d at 916.

The court in *Matter of Estate of Rothko,* 372 N.E.2d 291, 298-99 (N.Y. 1977), also awarded appreciation damages. The case concerned paintings in the estate of painter Mark Rothko. *Estate of Rothko,* 372 N.E.2d at 293. The estate beneficiaries sought surcharge of the executors and restitution

to the estate of certain paintings. *See id.* at 293. Because the paintings could not be returned to the estate, the court ruled that "the estate [was] therefore entitled to their value at the time of the decree, i. e., appreciation damages." *Id.* at 298. The purpose of such a surcharge was to "make the estate whole." *Id.*

Courts have also awarded appreciation damages in cases involving monetary investments. For example, in *In re Estate of Scharlach*, 809 A.2d 376, 386 (Pa. Super. Ct. 2002), the court approved imposing a surcharge upon the trustee that constituted the gain that the trust's principal would have realized had the trustee adhered to the investment plan. Such a remedy, the court explained, placed the beneficiary in the position he would have been had the trustee followed the investment plan. *In re Estate of Scharlach*, 889 A.2d at 386; *see In re Scheidmantel*, 868 A.2d at 493 (court may grant a surcharge "for the purpose of providing the beneficiaries with the unrealized gain to the value of principal assets of a trust that was lost because of a trustee's failure to fulfill its duty of care").

■ In this case, we hold that the trial court did not engage in an unsustainable exercise of discretion by awarding the difference in value of the units of the Hartford Life Annuity from the date they were misappropriated to the date that the probate court approved the partial settlement. The trial court reasonably could have concluded that such a surcharge was equitable under the circumstances of this case.

Peerless next asserts that the evidence before the probate court failed to support the surcharge it imposed. The record submitted on appeal reveals, however, that the probate court based its decision upon the testimony of the petitioners' expert. As there is evidence in the record to support the surcharge imposed by the probate court, we uphold it.

Peerless also contends that the surcharge imposed by the probate court would have been inequitable had the fund from which Nelson took the units depreciated in value. Presumably, had the fund from which the money was taken depreciated in value, the probate court would have imposed a different remedy than that which it imposed here. We need not speculate in this case, however, as to what remedy a probate court might deem equitable in such a case.

Finally, Peerless contends, for the first time on appeal and without citing any authority, that because the petitioners introduced no evidence of the rate of return that a prudent investor would have realized, "the statutory prejudgment rate established under RSA 336:1 appropriately measures the Estate's loss of use of funds." We decline to address this argument because Peerless has failed to demonstrate that it preserved it for our review. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250

(2004). The record submitted on appeal reveals that Peerless failed to raise this argument to the probate court.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.