■ DANIEL SULLIVAN, Respondent, v INTERNATIONAL FIDELITY INSURANCE COMPANY, Appellant, et al., Defendant. (And a Third-Party Action.) — In an action to recover for the value of work, labor and services rendered by plaintiff's remote assignor, defendant appeals from stated portions of a judgment of the Supreme Court, Rockland County (Stolarik, J.), dated March 5, 1982, which, *inter alia*, awarded plaintiff the sum of $125,682, upon a jury verdict. Judgment reversed, insofar as appealed from, the first and third decretal paragraphs are deleted, and a new trial is granted in accordance herewith, with costs to abide the event. Defendant International Fidelity Insurance Company (hereinafter International) wrote a performance, labor, materials and payment bond on behalf of Glendale Fire Sprinkler Corporation (hereinafter Glendale) in connection with a construction project at the Brooklyn Cooperative Meat Distribution Center, Inc. (hereinafter BCMD), a City of New York municipal improvement project. Glendale was hired to install a water sprinkler system in the BCMD complex. Glendale defaulted in its performance, whereupon defendant International entered into a written contract with Double G. Mechanical, Inc. (hereinafter Double G) to complete the unfinished work. The contract price was $260,000. One provision of the contract provided "INTERNATIONAL shall, in addition to the agreed price, pay to DOUBLE G the same amount allowed for changes, modifications, or extras, ordered and approved in writing by BCMD and/or NYC under Contract 4S * * * DOUBLE G shall have sole and exclusive right to agree to any change, modification or extra, or any deletion without the prior consent of INTERNATIONAL." The contract further provided that "[n]either party may assign this agreement, or any right or interest hereunder without the consert of the other party; DOUBLE G shall not assign any monies due or to become due to it hereunder without the prior written consent of INTERNATIONAL." The contract also provided that it would "become operative upon the happening of [certain] conditions precedent to be performed by the parties hereto". Double G continued to perform under the contract until December, 1975 when it was locked out of the work site and the project was closed down. At that point an estimated 95% of the work had been completed. Prior to the lockout, Double G had assigned to Community National Bank and Trust Company of New York all of its accounts receivable and contract rights "now or hereafter existing or acquired" as collateral security for loans previously given to Double G by said bank. Double G did not obtain written consent from International to the assignment. Thereafter, a second assignment was executed from Community National Bank to plaintiff Daniel Sullivan and defendant Robert Gardner, both of whom were the principals of Double G. During the course of the construction work, certain extra work and materials were allegedly requested by BCMD's field supervisor and field engineer. Double G submitted invoices for extras and modifications in the total amount of $93,581. Payment was received for the full $260,000 due under the contract but no payment was received on the invoices for extras and modifications. Thereafter, Sullivan commenced this suit against International and Gardner claiming a balance due of $93,581. In its charge to the jury at trial, the court instructed the jury, *inter alia*, that (1) the "claim in this law suit is basically a claim for work, labor and services * * * which is sometimes referred to as the quantum meruit theory" and (2) they were "not to consider whether the contract was operative or not, whether it was breached or not or indeed any consideration except the Court's charge to you on a claim for work,

labor and services or quantum meruit". The jury returned a verdict in favor of plaintiff for the full amount requested in the complaint. This appeal ensued. We reverse the judgment, insofar as appealed from, and grant a new trial. It has been consistently held that an action for *quantum meruit* will not lie where an express and enforceable contract exists between the parties concerning the same subject matter (*Miller v Schloss,* 218 NY 400, 406-407; *Larme Estates v Omnichrome Corp.,* 250 App Div 538, 540, affd 275 NY 426; *Abinet v Mediaville,* 5 AD2d 679; *Hohenberg Co. v Iwai N. Y.,* 6 AD2d 575, 578; *Gross v Russo,* 54 AD2d 706). In the instant case it is undisputed that an express contract was entered into by the parties and contained specific provisions regarding payment by International to Double G for changes, modifications, or extras. Confronted with these obstacles to a recovery on a theory of *quantum meruit,* plaintiff attempted to establish at trial that the contract executed by International and Double G never became operative due to the fact that certain conditions precedent had never been fulfilled. However, at best, an issue of fact existed as to whether all the necessary conditions precedent were performed and whether the contract ever became operative. Under these circumstances, the trial court erred in (1) failing to submit this issue to the jury, and (2) failing to instruct the jury that the theory of *quantum meruit* could only be considered if they found that the contract never became operative. Moreover, the jury should have been additionally instructed that if they found that the express contract did become operative they were to further decide whether the contractual provision requiring that authorizations for changes, modifications or extras be in writing was complied with by Double G and whether any failure by Double G in complying with said requirement was waived by International (see *Dana Steel v Cell-San Constr. Co.,* 84 AD2d 756; *Davis Accoustical Corp. v National Sur. Corp.,* 27 AD2d 624). With regard to the contractual provision prohibiting assignments without the written consent of International, it has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments (*Allhusen v Caristo Constr. Corp.,* 303 NY 446; *State Bank v Central Mercantile Bank,* 248 NY 428, 435; *Empire Discount Corp. v Bouley Co.,* 5 Misc 2d 228; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395). On the other hand, where the language employed constitutes merely a personal covenant against assignments, an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the covenant (*Sacks v Neptune Meter Co.,* 144 Misc 70, 79, affd 238 App Div 82; *Manchester v Kendall,* 19 Jones & Sp 460, affd 103 NY 638; *Empire Discount Corp. v Bouley Co., supra*). The relevant clause in the contract here in question "contained no provision that an assignment made without * * * consent * * * should be void, nor does it provide that an assignee would acquire no rights by reason of any such assignment, nor dies it provide that the contractor shall not be required to recognize or accept any such assignment" (*Empire Discount Corp. v Bouley Co., supra,* p 230). Accordingly, the clause is distinguishable from that employed in *Allhusen v Caristo Constr. Corp. (supra,* p 449), which stated that any assignment of money due or to become due without written consent " 'shall be void' ". Under that particular language the court in *Allhusen (supra),* declared the assignment to be void. In the case at bar, as in *Empire Discount Corp. v Bouley Co. (supra)* and *Sacks v Neptune Meter Co. (supra),* there was merely a covenant not to assign. Accordingly, the prohibition against assignments in the contract at bar cannot defeat any recovery by plaintiff. Mollen, P. J., Damiani, Titone and Mangano, JJ., concur.