Kenerson v. Morgan Guaranty Trust    CV-91-611-SD  05/25/95 p

UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


Jean R. Kenerson, Administratrix of
 the Estate of Vaughan H. Kenerson


        v.                                      Civil No. 91-611-SD


Morgan Guaranty Trust Company;
Bank of California, N.A.



                            O R D E R


     This civil action "arises from the fraudulent conduct of an

attorney who forged check indorsements and absconded with a

widow's money."  Kenerson v. FDIC, 44 F.3d 19, 21 (1st Cir.

1995).  Plaintiff Jean Kenerson, serving in her capacity as

administratrix of her deceased husband's estate, seeks to recover

those losses from defendants Morgan Guaranty Trust Company

(Morgan Guaranty) and Bank of California, N.A. (Bank of

California), the banks on which said checks were drawn.[1]

---

[1]John C. Fairbanks, the above-referenced attorney and co-
administrator of the Estate, had disappeared prior to the
commencement of suit and thus was never named as a party
defendant. He was subsequently located, deceased, in a hotel room
in Las Vegas, Nevada.  Although several banks were initially
named in the suit, defendants Deak International Goldline Limited
and Chase Manhattan Bank, N.A., were excused when the court
granted plaintiff's voluntary nonsuit without prejudice on
November 8, 1990.  First Citizens National Bank of Newport, New

Presently before the court is plaintiff's motion for partial summary judgment regarding the availability of "pre-writ" interest,[2] defendants' objection thereto, and plaintiff's reply memorandum.

## Background

On July 15, 1981, the Sullivan County Probate Court appointed plaintiff Kenerson and John C. Fairbanks as co-administrators of the Estate of Vaughan H. Kenerson, who died on July 8, 1981.[3]

---

Hampshire (First Citizens)--the depositor bank--was ultimately placed into receivership and managed by the Federal Deposit Insurance Corporation (FDIC). On September 8, 1993, the court granted the joint motion of Kenerson and FDIC to dismiss FDIC as a defendant. The remaining defendants--Dean Witter Reynolds, Inc. (Dean Witter), Morgan Guaranty, and Bank of California-- filed cross-motions for summary judgment, which the court granted on April 14, 1994. On appeal, the First Circuit affirmed the judgment as to Dean Witter, but vacated and remanded the judgment as applied to Morgan Guaranty and Bank of California. See Kenerson, supra, 44 F.3d at 36, aff'g in part and vacating in part, Kenerson v. Dean Witter Reynolds, Inc., No. 91-611-SD (D.N.H. Apr. 14, 1994).

[2]In contradistinction to prejudgment interest, a statutory remedy which runs from the time suit is filed until judgment, see infra note 10, plaintiff's "pre-writ" claim seeks to recover interest for the time between the alleged conversion and the filing of suit.

[3]Fairbanks subsequently resigned as co-administrator. Plaintiff, the surviving spouse of the deceased and the sole beneficiary of the estate, was thereafter appointed as administratrix on June 29, 1989.

On August 18, 1981, Fairbanks established an estate checking account, account number 1333291, with First Citizens. This account was opened in the name "Estate of Vaughan H. Kenerson, c/o John Fairbanks, Attorney," and Fairbanks listed himself as the sole authorized signatory. Complaint ¶ 11. Plaintiff alleges, "At all times relevant to this action, Fairbanks also maintained at First Citizens/BankEast[4] an account under the name 'John C. Fairbanks Law Offices Trust Account,' account number 11309-7 (the 'Fairbanks Trust Account')." Id. ¶ 12. On or about November 10, 1981, Fairbanks opened an account at Dean Witter in the name of the Estate, account number 486-47326, to which he delivered Estate securities valued, as of November 30, 1981, at $248,660.87.

During the period in which the Dean Witter account was open, from November 10, 1981, until October 31, 1984, a total of $255,978.38 was paid out of that account. Each of the payments from the account was made by a check drawn by Dean Witter either on an account at Morgan Guaranty or on an account at Bank of California. A total of 25 such checks were written. Each such check was made payable to the order of:

_____

[4]BankEast is the successor-in-interest to First Citizens, and was the entity ultimately seized by the FDIC due to insolvency.

3

                    Estate of Vaughan H. Kenerson
                    Jean R. Kenerson &
                    John C. Fairbanks, Administrators.[5]

"Fairbanks indorsed these checks by writing first his own name (without any description of his role), followed by the name of Mrs. Kenerson," Kenerson, supra, 44 F.3d at 21, and then deposited them at First Citizens.[6]

First Citizens accepted all of the deposited checks and transmitted same, as appropriate, to either Morgan Guaranty or Bank of California, whereupon the checks were then paid. In total, "Fairbanks withdrew from the Estate bank account, for his own benefit, all but a small portion of the funds in that account . . . [and] little[7] if any of the remaining funds . . . were disbursed in any way that inured to Mrs. Kenerson's benefit, either individually or in her capacity as co-administrator." Id. at 22.

_____

[5]The court notes that on some checks, "Admin", rather than "Administrators", appeared on the last line.

[6]One of the Dean Witter checks, in the amount of $150,000, was deposited in Fairbanks' own First Citizens account. The remaining checks were deposited in the Estate account at First Citizens.

[7]Although the parties do not agree as to an exact amount, there is agreement that the funds disbursed to Mrs. Kenerson from the Estate account amounted to no less than $20,000 and no more than $66,000.

4

<u>Discussion</u>

<u>1. Summary Judgment Standard</u>

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994), <u>cert. denied</u>, 63 U.S.L.W. 3817 (U.S. May 15, 1995) (No. 94-1416); <u>see also</u> <u>Woods v. Friction Materials, Inc.</u>, 30 F.3d 255, 259 (1st Cir. 1994); <u>Maldonado-Denis</u>, <u>supra</u>, 23 F.3d at 581.

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists.  Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), petition for cert. filed, 63 U.S.L.W. 3736 (U.S. Apr. 4, 1995) (No. 94-1630).

> When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact: the failure of proof as to an essential element necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law.

Smith, supra, 40 F.3d at 12 (citing Celotex, supra, 477 U.S. at 322-23; Woods, supra, 30 F.3d at 259).

Conversely, when a trialworthy issue is raised, summary judgment is inappropriate.  However, "[t]rialworthiness necessitates 'more than simply show[ing] that there is some metaphysical doubt as to the material facts.'"  National Amusements, supra, 43 F.3d at 735 (quoting Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))

6

(alteration in National Amusements). Thus, "'[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations . . . rank speculation . . . [or] improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)).

2. Uniform Commercial Code (Code) § 3-419[8]

Plaintiff alleges that the drawee banks are liable for

---

[8]In 1993, New Hampshire Revised Statutes Annotated (RSA) 382-A:3-419 was repealed, amended, and reenacted as RSA 382-A:3-420, to be effective January 1, 1994. As said revisions affect substantive rights, there is no retroactive application and the matter sub judice is controlled by the predecessor provision. See Eldridge v. Eldridge, 136 N.H. 611, 613, 620 A.2d 1031, 1032 (1993) ("there is a presumption of prospectivity when a statute affects substantive rights").

7

conversion based on the application of RSA 382-A:3-419.[9] Plaintiff further "contends that a substantial component of her damages consists of the interest she would have earned on the converted funds if she had had the use of them from the time they were converted until the time suit was filed." Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment (Plaintiff's Memorandum) at 2. Styled as "pre-writ" interest, see supra note 2, plaintiff essentially seeks an interest award over and above whatever statutory prejudgment

---

[9]

**382-A:3-419 Conversion of Instrument; Innocent Representative.**
  (1) An instrument is converted when
    (a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or
    (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
    (c) it is paid on a forged indorsement.
  (2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

RSA 382-A:3-419 (1961) (repealed, amended, and reenacted as 382-A:3-420 (1993) (effective January 1, 1994)).

8

interest she may be entitled to pursuant to RSA 524:1-b.[10]
Defendants press for a strict reading of RSA 382-A:3-419(2) and
maintain that their conversion liability, if any, is limited to
the face amount of the checks at issue.[11]

a.  Conversion Liability

Drawee liability under RSA 382-A:3-419 is clear and
unambiguous.  See James J. White and Robert S. Summers, Uniform Commercial
Code § 15-4, at 502 (1972) ("Section 3-419 covers drawees
explicitly: when a drawee pays over a forged indorsement it is

---

[10]RSA 524:1-b (1974) provides:

> In all other civil proceedings at law or in
> equity in which a verdict is rendered or a
> finding is made for pecuniary damages to any
> party, whether for personal injuries, for
> wrongful death, for consequential damages,
> for damage to property, business or
> reputation, for any other type of loss for
> which damages are recognized, there shall be
> added forthwith by the clerk of court to the
> amount of damages interest thereon from the
> date of the writ or the filing of the
> petition to the date of such verdict or
> finding even though such interest brings the
> amount of the verdict or findings beyond the
> maximum liability imposed by law.

[11]At bottom, the question to be determined by the instant
motion is whether pre-writ interest is an element of plaintiff's
damages, as opposed to the amount of such.  Consequently, the
question before the court is one of law, not fact, and thus may
appropriately be determined on a motion for summary judgment.

9

liable in conversion.").[12]  The amount of damages recoverable

under RSA 382-A:3-419 is, however, less clear.

RSA 382-A:3-419(2) provides, "In an action against a drawee

[for conversion], the measure of the drawee's liability is the

face amount of the instrument."[13]  Notably absent from the

language of this section is any mention of prejudgment or pre-

writ interest.  See 6A RONALD A. ANDERSON, UNIFORM COMMERCIAL CODE § 3-

419:60, at 107 (1993) ("The [Uniform Commercial] Code makes no

provision relating to the recoverability of prejudgment interest

in an action based on UCC § 3-419.").  However, one commentator

has noted that "[c]onversion under [Uniform Commercial Code] § 3-

_____

[12]Plaintiff's own negligence respecting the forgeries may,
however, operate to bar an action for conversion against the
drawee banks.  See RSA 382-A:3-406 (plaintiff's negligence must
"substantially contribute[] . . . to the making of an
unauthorized signature . . . .").  As this issue is not herein
presented, the court expresses no opinion regarding either the
appropriate elements of such a defense or the merits of same.

[13]Although with non-drawee convertors the amount of
liability is "presumed" to be the face value of the instrument,
drawees are subject to "a rule of absolute liability."  RSA 382-
A:3-419 cmt. 4.  The revised statutory provision, now applying
the "presump-tion" to both drawees and non-drawees alike, see RSA
382-A:3-420(b), neither vitiates plaintiff's pre-writ/prejudgment
interest argument nor enhances defendants' asserted "face value"
limitation.  Rather, the practical effect of such a construction
merely renders inadmissible any evidence or common-law defenses
offered by the drawee that the obligation owed was in fact worth
less than the face amount.  See True v. Fleet Bank-NH, 138 N.H.
679, 681-82, 645 A.2d 671, 672 (1994).

10

419 by payment over a forged indorsement has the same attributes as the common law action of conversion."  ANDERSON, supra, § 3-419:30, at 82 (footnote omitted).

Since a conversion action is tortious in character, "the recoverability of prejudgment interest will be governed by the pre-Code law relating to the recovering of such interest in tort actions."  ANDERSON, supra, § 3-419:60, at 107-08.  Accordingly, the court finds and rules that whether plaintiff is properly entitled to an award of interest, and the proper measure of such interest, turns upon an analysis of common law conversion actions in New Hampshire.


b.  Pre-Writ/Prejudgment Interest

The Code provides that "unless displaced by the particular provisions of this chapter the principles of law and equity . . . shall supplement its provisions."  RSA 382-A:1-103.  Since pre-writ interest is not explicitly provided for in RSA 382-A:3-419, the court turns to the common law principles of conversion in order to "supplement" its analysis.

Defendants argue,

> It is undisputed that this case is about a
> drawee bank's alleged conversion, and does
> not involve a claim for breach of fiduciary
> duty.  Plaintiff is asking this Court to

11

> extend New Hampshire law beyond the
> parameters already laid out by the New
> Hampshire Supreme Court in [Estate of] Ward,
> [129 N.H. 4, 523 A.2d 28 (1986)], while
> avoiding certification of this question of
> first impression to the New Hampshire Supreme
> Court.

Defendants' Objection Memorandum at 5-6. Upon deeper inquiry, however, the court finds that the law of New Hampshire cannot sustain defendants' position.

The availability of prejudgment interest is a legislatively-created vehicle to provide complete compensation for a plaintiff's economic damages. See RSA 524:1-b, supra note 10; see also West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.") (citation omitted); Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 504 (1st Cir. 1994) (RSA 524:1-b is intended "to compensate the plaintiff for loss of use of the money it should have had." (citing Lakin v. Daniel Marr & Son, Co., 732 F.2d 233, 238 (1st Cir. 1984)), petition for cert. filed, 63 U.S.L.W. 3756 (U.S. Apr. 6, 1995) (No. 94-1640).

In an action for pecuniary damages, the customary rule in

12

New Hampshire is that "pre-judgment interest can only accrue from the time that suit is filed or when a demand is made." In re Estate of Ward, 129 N.H. 4, 12, 523 A.2d 28, 34 (1986); see also 5 RICHARD V. WIEBUSCH, NEW HAMPSHIRE PRACTICE: CIVIL PRACTICE AND PROCEDURE § 1691, at 86-87 (Supp. 1992) ("The prevailing party is entitled, to an award of interest on the amount of any damages allowed by the verdict or decree, figured from the date the action is begun until the date judgment is entered. Interest is not awarded for the period between the time the claim arose and the commencement of the action.") (footnotes omitted).

However, when a cause of action sounds in conversion, "[t]he ordinary measure of damages . . . is the value of the property at the time of conversion with interest to the date of judgment." Perry v. W.H. Burbee, Inc., 100 N.H. 456, 457, 129 A.2d 670, 671 (1957). This is a rule of law that has been consistently repeated and applied in New Hampshire jurisprudence since at least 1880. See, e.g., Morin v. Hood, 96 N.H. 485, 486, 79 A.2d 4, 5 (1951) (plaintiff entitled to the value of the chattels at the time of the conversion with interest to the date of judgment); E.J. Caron Enters., Inc. v. State Operating Co., 87 N.H. 371, 373, 179 A. 665, ___ (1935) ("the measure of damages is the value of the property at the time of the conversion with interest to the date of judgment"); Johnson v. Farr, 60 N.H. 426,

13

428 (1880) ("the measure [of damages] is the value of the [chattels] at the time of their conversion, with interest to the date of judgment.").[14]  Thus, in an action for conversion, the

---

[14]New Hampshire's general rule on conversion damages is likewise in accord with the RESTATEMENT position as well as other learned authorities.  To wit, the RESTATEMENT provides that:

> (1) When one is entitled to a judgment for the conversion of a chattel or the destruction or impairment of any legally protected interest in land or other thing, he may recover either
>     (a) <u>the value of the subject matter</u> or of his interest in it <u>at the time and place of the conversion</u>, destruction or impairment; . . . .
> (2) His damages also include:
>
>     . . . .
>     (c) <u>interest from the time at which the value is fixed</u>; and
>     (d) compensation for the loss of use not otherwise compensated.

RESTATEMENT (SECOND) OF TORTS § 927(1)(a), (2)(c)-(d) (1979) (emphasis added).  Moreover, if conversion liability is maintained, plaintiff

> is entitled to interest upon the amount found due
>     (a) for the taking or detention of land, chattels or other subjects of property, or the destruction of any legally protected interest in them, when the valuation can be ascertained from established market prices, <u>from the time adopted for their valuation to the time of judgment</u> . . . .

RESTATEMENT, <u>supra</u>, § 913(1)(a) (emphasis added); <u>accord</u> 2 STUART M. SPEISER, ET AL, THE AMERICAN LAW OF TORTS § 8:32, at 679 (1985) ("The general rule of damages in a conversion action is the value of the property at the time and place of the conversion, plus

prejudgment time frame is expanded to run from the date of the conversion until the date of judgment.

The point of distinction that must be noted, however, is that whereas plaintiff appears to claim pre-writ interest as a form of prejudgment interest, it is not such per se.[15]  As previously stated, prejudgment interest, in the context of tort claims, is an economic remedy added on to a claim "in order to compensate the plaintiff for loss of the use of damage money while a lawsuit is pending."  Ward, supra, 129 N.H. at 12, 523 A.2d at 34 (citing Shepard v. General Motors Corp., 423 F.2d 406, 408 (1st Cir. 1979)).  "[T]he pre-judgment sum [thus] represents

---

interest.") (footnote omitted); 18 AM. JUR. 2D CONVERSION § 121, at 233 (1985) ("interest has usually been accepted as a proper measure of damages to be added to the value of the property from the date of conversion to the date of trial [because] the purpose of the award is to compensate the plaintiff for the loss sustained . . . .").

[15]In her motion, plaintiff seeks to draw a distinction between "pre-writ" and "prejudgment" interest.  For the reasons discussed herein, such a distinction is unnecessary when the tort of conversion forms the basis of defendant's liability.  Insofar as New Hampshire common law treats conversion losses to include the amount taken plus any interest thereon from the date of the conversion to the date of judgment, all such losses are "prejudgment."  However, such "prejudgment" losses are not the same as provided by RSA 524:1-b, supra note 10, and thus the statutory rate, as plaintiff ultimately concedes, does not apply. See Plaintiff's Reply Memorandum at 9 ("The plaintiff has never suggested that the statutory rate of 10 percent should apply; she intends to offer evidence of appropriate interest rates through expert testimony at trial.").

15

the initial loss that constitutes the claim."  <u>Id.</u>

When funds have been converted, however, what has been wrongfully taken is not simply the funds themselves, but also "the ability of the money to earn interest."  <u>Id.</u>  It is immaterial to the present discussion that the issue before the <u>Ward</u> court was misappropriation rather than conversion of funds or that the action was against a fiduciary rather than two drawee banks.  What is material is the practical effect of each tort: a sum certain of money and the interest that could be earned thereon have been converted.  As such, the <u>Ward</u> court's conclusion that "the lost interest was just as much a debt as the actual funds," <u>id.</u>, not only is relevant and probative, but also is persuasive and dispositive.

The court finds and rules that in order for a prevailing plaintiff in a conversion action to be made whole, the damage remedy must include not only the base amount converted, but likewise the interest that would have been earned thereon, calculated from the date of the conversion up to the award of judgment.  Accordingly, plaintiff's motion for partial summary judgment with regard to the measure of conversion damages available under RSA 382-A:3-419 must be and herewith is

16

granted.[16]

Conclusion

For the reasons set forth herein, plaintiff's motion for partial summary judgment (document 55) is granted.  Conversion damages under RSA 382-A:3-419 are comprised of the funds converted plus interest thereon from the date of the conversion until the date of judgment.

SO ORDERED.

                                        _____
                                        Shane Devine, Senior Judge
                                        United States District Court

May 25, 1995

cc:  William L. Chapman, Esq.
     John T. Broderick, Jr., Esq.

---

[16]The court notes that a bifurcated interest rate calculation will need to be performed so that plaintiff does not receive a "double recovery."  See Lakin, supra, 732 F.2d at 238-39.  Whereas the statutory rate of interest will apply to all sums due plaintiff from the date her writ was filed until the judgment is returned, the applicable interest rate for the period between the conversion and the filing of suit is a factual matter to be proven at trial.