Rockingham
No. 2006-720

SINGER ASSET FINANCE COMPANY, LLC

v.

DEBORA WYNER

Argued: June 20, 2007
Opinion Issued: December 4, 2007

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*James S. LaMontagne* on the brief and orally), for the petitioner.

*Law Offices of Edward W. Richards & Associates, P.C.*, of Nashua (*Edward W. Richards* and *Tanya Pardo* on the brief, and *Mr. Richards* orally), for the respondent.

BRODERICK, C.J. The petitioner, Singer Asset Finance Co., LLC (Singer), appeals orders of the Superior Court (*Morrill*, J.) granting summary judgment in favor of the respondent, Debora Wyner, on its request for declaratory relief and claims for conversion and breach of

contract. Singer also appeals the amount of damages awarded on its claim for unjust enrichment. Wyner cross-appeals the trial court's dismissal of her claims for tortious interference with contractual relations and unjust enrichment. We affirm.

I

The following facts are not disputed. In 1995, Wyner resolved a medical malpractice claim by entering into a structured settlement agreement. Under the agreement, she was entitled to a series of payments commencing in May 1995 and ending in May 2019. The settlement agreement contains the following provisions:

> [Wyner] nor any payee may not assign, anticipate, pledge or encumber said payments, and any attempt to do so shall not bind [the underlying tort suit defendant's insurer].
>
> . . . .
> [This agreement] shall be binding upon and inure to the benefit of the . . . successors and assigns of [both Wyner and the insurer].

The settlement agreement also provides that it "shall be construed and interpreted in accordance with the law of the State of New Hampshire."

The settling insurer in Wyner's tort suit assigned its obligation to make periodic payments to Transamerica Annuity Service Corporation (TASC). TASC, in turn, purchased an annuity contract from Transamerica Occidental Life Insurance Company (TOLIC) to fund the payments to Wyner.

In 1996, Wyner contacted an agent of Singer in the State of Washington to negotiate a sale of some of her periodic payments for cash. At the time, she wanted to sell some payments to be able to purchase "a place of [her] own" and to "keep [her] lifestyle the same" as it had been prior to her injury. Singer ultimately agreed to pay Wyner $66,885 for a block of payments totaling $139,375. In 1997, Singer paid Wyner $23,490 for a second block of periodic payments totaling $171,077. At the time of each of these transactions, Wyner executed a purchase agreement and an "Absolute Assignment and Waiver of Claim." Singer contends that under these agreements, Wyner released any rights, claims and interests to any benefits or proceeds that she possessed with respect to the periodic payments. Each purchase agreement contained a clause stating: "This Agreement, the Related Documents and the Ancillary Documents shall be governed, construed and enforced in accordance with the substantive laws of the State of New York without regard to its choice of law rules."

In late 1996, Wyner opened a deposit account in New York, into which she directed her payments from TOLIC. From December 1996 through

May 2004, her payments were deposited into this drop account, and Singer made regular withdrawals from it. TOLIC was never made aware that its payments were effectively going to Singer. This arrangement remained in place until May 2004, when Wyner contacted TOLIC and redirected the periodic payment checks to her home address in New Hampshire. Singer subsequently filed suit against Wyner, TASC and TOLIC, for, *inter alia*, declaratory relief, breach of contract, conversion, and unjust enrichment. In response, Wyner filed counterclaims for unjust enrichment, tortious interference with contractual relations, and a violation of the Washington consumer protection act.

The parties filed cross-motions for summary judgment on all of their claims, and the superior court issued a series of orders addressing those motions. First, in March 2006, the superior court ruled that it would apply New York law to Singer's claims arising from any alleged violations of its purchase agreements with Wyner. In May, the superior court ruled that Wyner's assignment of her periodic payments to singer was not enforceable. Relying upon *Singer Asset Finance Co. v. Bachus*, 741 N.Y.S.2d 618 (App. Div. 2002), the trial court ruled that in New York, "the recipient of the non-assignable periodic payment settlement agreement lacks the power as well as the right to assign," and that Wyner could not waive the anti-assignment clause in her settlement agreement. The trial court therefore: (1) granted summary judgment in favor of Wyner with respect to any alleged breach of the purchase agreements; (2) granted summary judgment in favor of Singer on its claim for unjust enrichment; and (3) granted summary judgment in favor of Singer with respect to Wyner's Washington-based consumer protection claim.

The superior court issued a third order in August ruling that Singer's common law unjust enrichment claim would be resolved under New Hampshire law. Finally, in September, the court ruled that the statute of limitations barred Wyner's claims for tortious interference with contractual relations and unjust enrichment, declined to award attorney's fees to either party, and entered judgment for Singer on its unjust enrichment claim in the amount of $8,105.09, plus statutory interest from the date of its petition.

On appeal, Singer argues that the superior court erred by: (1) ruling that under New York law, the anti-assignment language in Wyner's settlement agreement was enforceable, rendering the periodic payments non-assignable; (2) ruling that under New York law, Wyner did not waive, and was not estopped from asserting, the anti-assignment language in her settlement agreement; and (3) awarding insufficient damages under New Hampshire law on its unjust enrichment claim. We note that in her brief, Wyner suggests that New Hampshire law should guide our interpretation

and application of the anti-assignment language in her settlement agreement. She also cross-appeals, arguing that the trial court erred by ruling that her tortious interference with contractual relations and unjust enrichment claims were time-barred. We address each issue in turn.

## II

In an appeal from an order granting summary judgment, "[w]e review the trial court's application of the law to the facts *de novo." St. Onge v. MacDonald*, 154 N.H. 768, 770 (2007). We first turn to the preliminary choice of law issues raised by Wyner. She argues on appeal that our analysis of the effect of the anti-assignment language in her settlement agreement should utilize New Hampshire law, in light of the express choice of law provision in that document. Singer, on the other hand, maintains that Wyner failed to raise this argument before the trial court, and thereby failed to preserve the issue for our review. We agree. *See generally Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004).

We observe that in her objection to Singer's motion for summary judgment, Wyner stated: "The [respondent] does not necessarily disagree with the allegation that New York law applies [to this matter], however, if the Court so rules, the [respondent] should be awarded time to revise her pleadings, including her Counterclaim . . . ." The trial court relied upon this statement, and remarked that "[t]he respondent does not necessarily object to applying New York law" in its first summary judgment order. Moreover, Wyner failed to object to the trial court's application of New York law in any subsequent pleading. Indeed, she filed a revised motion for summary judgment affirmatively citing New York case law, which the trial court granted in substantial part.

■ Generally, a party must make a specific and contemporaneous objection during trial court proceedings to preserve an issue for appellate review. *See Milliken v. Dartmouth-Hitchcock Clinic*, 154 N.H. 662, 665 (2006). "It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial." *Red Oak*, 151 N.H. at 250. Since "we will not review any issue that was not raised below," *Milliken*, 154 N.H. at 665, we now assume without deciding that the superior court's application of New York law when evaluating the enforceability of the purchase agreements between Singer and Wyner was proper. Thus, we will evaluate the substance of Singer's contract claims under New York law.

## III

With respect to Singer's contract claims, we note that in 2002, New York enacted a Structured Settlement Protection Act "in response to the growing number of factoring companies using . . . the allure of quick and easy cash[] to induce settlement recipients to cash out future payments . . . at substantial discounts, depriving victims and their families of the long-term financial security their structured settlements were designed to provide." *Singer Asset Fin. Co., LLC v. Melvin*, 822 N.Y.S.2d 68, 70 (App. Div. 2006) (quotation omitted); *see* N.Y. Gen. Oblig. Law § 5-1706 (McKinney Supp. 2007). As a result, transfers such as the ones at issue in this case are now prohibited in New York "unless approved by a court of competent jurisdiction based upon express findings . . . that the transfer is in the best interest of the payee and that the discount rate, fees and expenses used to determine the net amount advanced are fair and reasonable." *Melvin*, 822 N.Y.S.2d at 70; *see, e.g., In re New York, LLC*, No. 2007-1721, 2007 WL 2492235, at *3-4 (N.Y. Sup. Ct. 2007) (trial court order denying petition to sell structured settlement payments). Our consideration of the instant matter, however, is constrained by New York contract law as it existed when Wyner entered into her purchase agreements with Singer. *Melvin*, 822 N.Y.S.2d at 70.

In New York, "it has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments." *Macklowe v. 42nd St. Dev. Corp.*, 566 N.Y.S.2d 606, 606-07 (App. Div. 1991); *see, e.g., Spinex Labs. v. Empire Blue Cross & Blue Shield*, 622 N.Y.S.2d 154, 155 (App. Div. 1995) (anti-assignment clause stating "[a]ny assignment by you will be void" enforced literally). "On the other hand[,] where the language employed constitutes merely a personal covenant against assignments, an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the covenant." *Macklowe*, 566 N.Y.S.2d at 607 (quotation omitted); *see, e.g., Belge v. Aetna Casualty & Surety Company*, 334 N.Y.S.2d 185, 187-88 (App. Div. 1972) (clause stating contract "shall not be assigned . . . without . . . written consent" did not void subsequent assignment, but created right to recover damages from assignor committing breach). "The decisive consideration is . . . whether the assignor had the basic, fundamental right to transfer his valuable contract interest." *Belge*, 334 N.Y.S.2d at 188.

*Bachus*, the case principally relied upon by the trial court, involved facts similar to those currently before us. *See Bachus*, 741 N.Y.S.2d at 619. In that case, the settlement agreement stated that the periodic payments due

Bachus "[were] not subject in any manner to anticipation, alienation, sale, transfer, [or] assignment," and that Bachus lacked "the power to sell, mortgage or encumber same, or any part thereof." *Id.* (quotations omitted). Based upon this language, the New York appellate court found that "Bachus expressly, clearly, and unequivocally surrendered not only the right but the power to assign his rights under the structured settlement agreement, and thus any attempted assignment of his rights under that agreement was effectively barred." *Id.* at 620; *see also Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526, 531 (Conn. 2000) (discussing difference between "right" and "power" to assign). "With a clearly stated intent to render Bachus powerless to assign, there was no need for the non-assignment clause to also contain talismanic language or magic words describing the effect of any attempt by the payee to make an assignment." *Bachus*, 741 N.Y.S.2d at 620 (brackets and quotation omitted).

█ We find that the language employed in the anti-assignment clause of Wyner's settlement agreement has the same effect as that in *Bachus*. In plain terms, Wyner expressly, clearly, and unequivocally agreed that she "may not assign" her periodic payments from TOLIC. For all practical purposes, such a statement can only be seen as her surrender of the power to assign. This conclusion is bolstered by the fact that the anti-assignment clause in question does not contemplate the possibility of assignment, or indicate a means to achieve an enforceable assignment. *Cf. Macklowe*, 566 N.Y.S.2d at 606; *Belge*, 334 N.Y.S.2d At 188. Furthermore, the clause provides that TOLIC shall not be required to recognize or accept any assignment made by Wyner. *Cf. Sullivan v. International Fidelity Ins. Co.*, 465 N.Y.S.2d 235, 238 (App. Div. 1983). Courts analyzing New York law have found that this kind of clause effectively eliminates the power to assign. *See Bel-Ray Co., Inc. v. Chemrite (PTY) Ltd.*, 181 F.3d 435, 442 (3d Cir. 1999) (citing *Allhusen v. Caristo Constr. Corp.*, 103 N.E.2d 891, 893 (N.Y. 1952), and *Sullivan*, 465 N.Y.S.2d at 238). We therefore conclude that the anti-assignment clause in Wyner's settlement agreement contains a clear expression of intent to eliminate her power to assign the periodic payments. This renders her purchase agreements with Singer void. *Bachus*, 741 N.Y.S.2d at 620; *Belge*, 334 N.Y.S.2d at 188.

## IV

█ Notwithstanding this, Singer argues that Wyner waived her ability to invoke the anti-assignment clause as a defense to its claims because she voluntarily entered into purchase agreements with Singer, and honored those agreements for approximately eight years. We disagree. Singer fails to recognize that the anti-assignment clause in Wyner's settlement

agreement explicitly inured to the benefit of the settling insurer and, by extension, TOLIC. Thus, the protection of the clause was not Wyner's to waive. *See Garden State Bldgs. v. First Fidel.*, 702 A.2d 1315, 1322-23 (N.J. Super. Ct. App. Div. 1997), *cert. denied*, 707 A.2d 153 (N.J. 1998); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 322(2)(c) (1981) ("A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested . . . is for the benefit of the obligor . . . ."). The actual question that we must address is, therefore, whether TOLIC, as opposed to Wyner, waived enforcement of the settlement agreement's anti-assignment clause. *See Garden State Bldgs.*, 702 A.2d at 1322.

■ In New York, "[a] prohibition against assignment . . . may be waived." *Sillman v. Twentieth Century-Fox Film Corp.*, 144 N.E.2d 387, 391 (N.Y. 1957); *see also Belge*, 334 N.Y.S.2d at 189; *University Mews Associates v. Jeanmarie*, 471 N.Y.S.2d 457, 461 (Sup. Ct. 1983). Waiver may be achieved by a course of business dealings, *University Mews*, 471 N.Y.S.2d at 461, but "will not be inferred from mere silence or inaction," *Chapin v. Chapin*, 744 N.Y.S.2d 181, 183 (App. Div. 2002) (quotation omitted). Indeed, "waiver requires that the party to be estopped be aware of certain facts and, being aware of them, elect not to take advantage of them." *Id.* (quotation omitted). Waiver is, in other words, "the intentional relinquishment of a known right," *Sillman*, 144 N.E.2d at 391 (quotation omitted), and will lead to estoppel only when an individual or entity "has accepted the benefits of an agreement," *Chapin*, 744 N.Y.S.2d at 183.

In this case, the summary judgment record is devoid of evidence that TOLIC was ever aware that Wyner's periodic payments had been assigned to Singer. *Cf. Belge*, 334 N.Y.S.2d at 188-89. Instead, Singer required Wyner to inform TOLIC only that she had opened a New York bank account bearing her own name, into which the periodic payments were thereafter to be deposited. Furthermore, the record reveals no affirmative act or manifestation of intent on TOLIC's part signifying acceptance of Wyner's transfer. Indeed, it appears that Wyner may have been required to open the New York drop account to circumvent an initial invocation of the anti-assignment clause by TOLIC in 1996. In any event, the summary judgment record in no way supports an inference of waiver by TOLIC, and the superior court, therefore, properly granted judgment in favor of Wyner on Singer's claims stemming from the purchase agreements. *See Anderson v. Motorsports Holdings*, 155 N.H. 491, 494 (2007) ("If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision." (quotation omitted)). TOLIC's "silence" and "inaction" during the course of the instant litigation, despite its having

been named a defendant in the superior court proceedings on this matter, does not rebut this conclusion. *Chapin*, 744 N.Y.S.2d at 182-83.

We further disagree with Singer that the New York Uniform Commercial Code nullifies the anti-assignment clause in Wyner's settlement agreement. Wyner correctly notes that this issue was squarely resolved by the *Bachus* court, which found that the UCC would not apply to the transaction between Singer and Wyner, even if that transaction were valid. *Bachus*, 741 N.Y.S.2d at 620-21.

V

■ In the absence of a valid and enforceable contract, and after correctly finding that Wyner could not waive the anti-assignment clause, the trial court properly entered summary judgment for Singer on its claim that Wyner had been unjustly enriched by its cash advances. *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 127 (1982). Singer, however, challenges the amount of the damages it was awarded. "The correct measure of restitution for unjust enrichment is the value of the benefit received by the unjustly enriched party." *Id.* "The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case." *Decker v. Decker*, 139 N.H. 588, 590 (1995) (quotation omitted). We, therefore, review a trial court's equitable award of damages for an unsustainable exercise of discretion. *Blagbrough Family Realty Trust v. A & T Forest Prods.*, 155 N.H. 29, 46 (2007).

When determining that Singer was entitled to an award of $8,105.09, the trial court adopted damage calculations submitted by Wyner, which it considered "more fair and accurate" than those submitted by Singer. Wyner suggested that $19,195.09 in interest had accrued on the $90,375 she was advanced by Singer through July 2003, the point at which Singer was fully reimbursed for its advance by the periodic payments from TOLIC. Her calculations added simple interest to the declining balance owed Singer at New Hampshire's statutory interest rates. *See* RSA 336:1 (Supp. 2007). As of May 2004, when Wyner redirected the periodic payments from the New York drop account to her home, Singer had received $101,465 from TOLIC. Wyner therefore subtracted $11,090—the surplus transferred to Singer over and above the $90,375 advanced—from the $19,195.09 in accrued interest, arriving at a suggested award of $8,105.09. The trial court then added statutory interest to this figure from the date Singer filed its petition through the date of judgment. *See* RSA 524:1-b (2007).

Singer now argues that it should have been awarded compound interest on the $90,375 it advanced Wyner. In its view, the money advanced to

Wyner was effectively a "loan." Singer reasons: "If Wyner had ... attempted to procure a loan [for $90,375] from a lending institution ... she would have incurred costs, fees and she would have had to pay interest, compounded monthly, at prevailing rates on the principal of the loan until the principal and interest were paid in full."

■ "[T]he customary rule in New Hampshire is that pre-judgment interest can only accrue from the time that suit is filed or when a demand is made." *Kenerson v. Morgan Guaranty Trust Co.*, 889 F. Supp. 523, 528 (D.N.H. 1995) (quotation omitted); *see also* RSA 524:1-b; 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 52.01, at 388 (2d ed. 1998). We note that in a case of unjust enrichment, as opposed to conversion, *see Kenerson*, 889 F. Supp. at 529, or misappropriation, *see In re Estate of Ward*, 129 N.H. 4, 12 (1986), the propriety of adding pre-writ or pre-petition interest to a claim remains an open question as a matter of law. Furthermore, factually, it is unclear that the interest awarded here could be considered part of the debt Wyner equitably owed Singer. *Cf. In re Guardianship of Dorson*, 156 N.H. 382, 384-86 (2007); *Ward*, 129 N.H. at 12; *Kenerson*, 889 F. Supp. at 529 (pre-filing interest in order when lost interest earnings are part of underlying debt; pre-filing interest cannot simply be added to claim). However, since Wyner has not appealed the trial court's award of pre-petition interest to Singer, we will assume, without deciding, that Singer was entitled to some form of interest on its advance of $90,375.

■ Operating upon this supposition, we see no unsustainable exercise of discretion in the trial court's decision to award pre-petition interest in the same manner contemplated by New Hampshire's statutes governing interest on judgments. *See* RSA 336:1; RSA 524:1-b. After reviewing the record, which indicates that Wyner promptly spent the money she was advanced (as opposed to having invested it), we conclude that an award of simple interest on Singer's advance compensated the company in proportion to the benefit received by Wyner. *Petrie-Clemons*, 122 N.H. at 127. Singer cites, and we find, no authority for the proposition that an award of compound interest was required in this case. We, therefore, affirm the trial court's award.

## VI

■ We next turn to Wyner's argument that the trial court erred by dismissing her claims for tortious interference with contractual relations and unjust enrichment based upon the three-year statute of limitations on personal actions. *See* RSA 508:4 (1997). "A cause of action arises, thereby triggering the running of the three-year statute, once all the elements

necessary for such a claim are present." *Therrien v. Sullivan*, 153 N.H. 211, 213 (2006). With respect to Wyner's claim for tortious interference with contractual relations, we find that her cause of action accrued almost immediately after she entered into the first purchase agreement with Singer in 1996. "To establish liability for intentional interference with contractual relations, a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." *Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 40-41 (2005) (emphases omitted). Here, Wyner was "damaged" by any allegedly tortious interference—and her claim thus arose—when Singer received its first payment from TOLIC in 1996. At that point, she had been harmed financially because she began to receive less than the full value of her settlement.

⬛⬛⬛ Reading Wyner's brief broadly, we interpret her argument that Singer essentially committed an actionable tort each time it received a payment from TOLIC as calling for application of the "continuing wrong" doctrine to extend the limitations period. *See Thorndike v. Thorndike*, 154 N.H. 443, 446 (2006). Under the "continuing wrong" doctrine, "[w]hen a tort is of a continuing nature, although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period." *Id.* (quotation omitted). In this case, however, any tortious interference on Singer's part occurred at two discrete points in time, and concluded once Wyner signed her respective purchase agreements. Only the damage inflicted by Singer's alleged interference was of a continuing nature. We agree with those courts that have held that "[a] claim based on a single tort ordinarily accrues when the tort is completed, and the continuing accrual of injury or damages does not extend the accrual date." *McCabe v. Craven*, 2007 WL 1229095, at *3 (Idaho Ct. App. 2007); *see also Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."). Thus, we decline to apply the "continuing wrong" doctrine in this case.

We are also unpersuaded by Wyner's attempt to invoke the "discovery rule" to toll the statute of limitations. *See Keshishian v. CMC Radiologists*, 142 N.H. 168, 176-77 (1997). She suggests that she did not discover the "injury" inflicted by Singer until watching a television documentary in 2004 on "the abuse of structured settlement annuity

holders ... by [companies employing] predatory acquisition practices." Even if this were proven at trial, we agree with Singer that, as a matter of law, Wyner, "in the exercise of reasonable diligence," *id.* at 177 (quotation omitted), should have discovered the injury for which she now wishes to sue by 1997. At that time, it was clear that Singer had paid Wyner just 29 percent of the total future value of the periodic payments assigned, not accounting for inflation. Accordingly, we find that the trial court correctly declined to toll the limitations period on her tortious interference claim.

Finally, we find it unnecessary to address Wyner's arguments regarding the statute of limitations vis-à-vis her unjust enrichment claim; her claim is moot. *See In re Guardianship of R.A.*, 155 N.H. 98, 100-01 (2007). Wyner's claim was predicated upon the windfall Singer would have received had her purchase agreements been enforced. Since the trial court invalidated the purchase agreements, and restored the parties to the economic positions they held prior to Wyner's legally ineffective assignment (albeit with interest), it thereby resolved her unjust enrichment claim despite finding it time-barred.

We observe that while making her unjust enrichment arguments, Wyner discusses at length the inequitable financial burden this litigation and her dealings with Singer have placed upon her. Any expenses she has incurred, however, could not be recovered through an unjust enrichment action; her legal fees have not unjustly benefited Singer. We note that while Wyner initially sought an award of costs and attorney's fees, she did not appeal the trial court's failure to make such an award.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.