OPINION OF THE COURT
David Friedman, J.
On September 14, 1990 Warren Venturini, 73 years of age *888 was admitted to Lutheran Medical Center where he remained until he expired on November 10, 1990. The admitting diagnosis was carcinoma of tonsil with secondary diagnoses of dehydration, malnutrition, chronic obstructive pulmonary disease, pneumonia, atherosclerotic heart disease, anemia and atrial fibrillation.
Venturini, insured by Medicare, participated in a system of health insurance which is commonly referred to as an HMO, a health maintenance organization. The HMO in which Venturini enrolled was Elderplan, Inc., the defendant herein.
Elderplan issued a contract to Venturini which states at its inception that benefits are being provided under a demonstration program between Elderplan and the United States Department of Health and Human Services.
Paragraph 2 of section 1 of the contract states,
"Benefits Under This Contract Are in Place of and in Addition to Medicare Benefits
"Under a special agreement between Elderplan, Inc. and the Health Care Financing Administration (HCFA) of the U.S. Department of Health and Human Services, the benefits provided under this Contract will be given to you in place of the benefits you would otherwise receive under Medicare. This Contract gives you essentially the same benefits you receive under Medicare, plus many additional benefits. However, to receive any benefits under this Contract, you must meet the conditions described in this Contract.”
One of the significant conditions of the contract is that treatment may be received only through and authorized by a "Medical Group” meaning a group of physicians having an agreement with Elderplan to provide contract services. A primary exception to this requirement is care for a medical emergency or urgently needed care. As to these, section 11, paragraph 2 of the contract states,
"2. Care for a Medical Emergency or Urgently Needed Care Not Provided or Authorized by Your Medical Group
"You should contact your Medical Group before receiving care for a medical emergency or urgently needed care. However, you might require care for a medical emergency or urgently needed care under circumstances which prevent you from first obtaining advice from your Medical Group * * * When you receive care for a medical emergency or urgently needed care which is not provided or otherwise arranged by *889 your Medical Group, you must meet all of the following conditions in order to obtain benefits under this Contract:
"A. Care must be required due to a medical emergency or must be urgently needed care. We will provide benefits only if, in our judgment, care was needed due to a 'medical emergency’ or was 'urgently needed care,’ as defined below.
"A Medical Emergency is an accidental injury or the sudden and unexpected onset of a serious illness of such a nature that failure to obtain immediate care would place your life in jeopardy or cause serious impairment of your bodily functions. Examples of medical emergencies are heart attacks, strokes, poisonings, multiple trauma, or loss of consciousness. Examples of conditions which are not medical emergencies are sore throats, flu, toothaches, or muscle strain.
"Urgently Needed Care is unforeseen care rendered while you are temporarily out of our Service Area * * * and is required in order to prevent a serious deterioration in your health. While the immediacy of need of these services does not constitute a medical emergency, urgently needed care is such that the care cannot be delayed until you return to our Service Area.”
Even in the event of a medical emergency or urgently needed care section 11 goes on to require that prompt notification be given to the Medical Group with the further proviso that, "If you are hospitalized or are still receiving care, we have the right to require you to transfer to a Plan Hospital or other hospital designated by us and to transfer your care to your Medical Group physician. If you do not transfer as soon as, in our judgment, you are able to transfer without medically harmful results, no further benefits will be provided.”
It appears uncontroverted that after Venturini’s September 14, 1990 admission to Lutheran his Medical Group was not notified of the hospitalization which was occurring at a nonElderplan facility. Ultimately, Lutheran made a claim to Elderplan for payment. It was rejected on the ground that Venturini’s admission was not an emergency admission and was therefore unauthorized. Based on the medical records Elderplan took the position that Venturini was admitted to Lutheran by a non-Elderplan doctor with a complaint of difficulty swallowing and throat pain. Elderplan asserted that this was not an emergency admission; that Venturini was being followed by his Elderplan doctor for a cancer workup; that he should have been seen by his doctor at the Medical *890 Group and that the Medical Group was never notified of the admission to Lutheran.
Notwithstanding a contractual provision mandating that judicial review of the denial of benefits be brought in United States District Court, Lutheran commenced an action in this court. As a first cause of action the complaint alleges that Lutheran rendered services to Venturini, that the services were rendered at his request and that as a result of such services there is now due and owing Lutheran the sum of $18,629.16. The second cause of action alleges that Elderplan provides and/or administers medical benefits on behalf of Venturini; that he assigned his benefits to Lutheran; and that there is no agreement between Lutheran and Elderplan governing payment from Elderplan to Lutheran for Elderplan members but Elderplan has in the past made direct payments to the hospital for medical services rendered to its members. Lutheran asks for judgment in the sum of $18,629.16.
The action comes before the court via a motion by Elder-plan seeking an order pursuant to CPLR 3211 (a) (1) and (7) dismissing the complaint on the grounds that there is a defense founded upon documentary evidence and the pleading fails to state a cause of action. The first cause of action is claimed to fail to state a cause of action because it does no more than to set forth a claim by Lutheran against Venturini. It fails to allege that services were provided to or requested by Elderplan, or that Elderplan agreed to assume Venturini’s debt to Lutheran.
Regarding the second cause of action Elderplan points out that Lutheran has commenced this action as assignee of Venturini. Lutheran is therefore subject to any defense Elder-plan has against Venturini. Elderplan points to section 17, paragraph 1, of its contract which provides "You cannot assign any benefits or payments due under this Contract to any person, corporation, or other organization. Any assignment by you will be void. Assignment means the transfer to another person or organization of your right to the services provided under this Contract or your right to collect money from us for those services.” Based upon this provision Elder-plan asserts that Lutheran, suing merely as an assignee, is precluded from bringing this action.
In opposing the motion Lutheran makes a blunderbuss attack on the Elderplan contract. The argument made is that Elderplan has marketed itself as a substitute for Medicare but *891 in reality is not since there are a host of restrictions and guidelines, such as those involved here, which Medicare does not have. In regard to the nonassignment defense premised on paragraph 1 of section 17 of the contract, as earlier set forth, Lutheran makes a further claim that there is ambiguity. Ambiguity is said to arise from paragraph 6, which states, “Payments for covered services through your Medical Group or in a Plan Hospital, Plan Skilled Nursing Facility or Plan Health Related Facility will be made by us directly to the Medical Group, hospital or facility. If you receive covered services from any other provider of care, we reserve the right to pay either you or the provider” (emphasis supplied).
Other contentions raised by Lutheran are that Elderplan has waived its right to refuse payment and that Lutheran may recover as a third-party beneficiary.
At the outset it must be recognized that the issues raised by this motion are encompassed within an ongoing public debate concerning the availability and cost of health services. HMOs reflect one governmental attempt to encourage delivery of health care services at reasonable cost (Public Health Law § 4400). In a general sense Lutheran seeks to avoid the Elder-plan contract because it contains conditions and limitations— the need to use health providers participating in Elderplan— that Medicare does not. In a more focused attack it seeks to set aside the nonassignment provision, inter alla, on the grounds that it is ambiguous. In my view Lutheran’s contentions lack merit. Thus there is a defense founded upon documentary evidence, namely, the contract and pursuant to CPLR 8211 (a) (1) the action must be dismissed. This result makes academic Elderplan’s claim of failure to state a cause of action although there clearly is such a failure by the first cause of action.
Concerning ambiguity in the nonassignment clause, paragraph 1 of section 17 of the contract unequivocally bars assignment such as occurred here. The claim of ambiguity is premised upon paragraph 6 of section 17 which provides for payment either to the provider of care or the recipient of the care. In making this claim Lutheran has misconstrued paragraph 6. This paragraph is referring to services provided by participants in Elderplan or covered services from nonparticipants. It is Elderplan’s position that Venturini having entered Lutheran on his own was not receiving a covered service. Significantly, Lutheran has failed to present a scenario which would justify a conclusion that Venturini was receiving cov *892 ered services. Moreover, even if Lutheran was deemed to be arguing that Venturini entered the hospital under circumstances constituting a medical emergency it could not prevail on the motion. Lutheran has failed to present medical evidence to support such a claim. In addition, Elderplan was never notified of the admission which remains a requirement in the presence of a medical emergency. Finally, paragraph 6 does no more than reserve to Elderplan the right to determine who will receive payment for services without addressing assignability.
Since I conclude that there was no ambiguity in the nonassignment provision the issue that emerges as determinative is whether Elderplan could operate under a contract containing limitations such as existed here including a nonassignment provision.
Analysis of this issue must begin with the recognition that the services offered by Elderplan are subject to numerous Federal and State regulations. Thus the Federal Government has authorized reimbursement to HMOs for furnishing covered services to Medicare beneficiaries (42 CFR 417.400). The marketing activities of HMOs are prescribed by section 417.428 of the Health Care Financing Administration regulations (42 CFR 417.428) which requires HMOs to offer its enrollees adequate written description of its rules and benefits and to submit all marketing materials to the Health Care Financing Administration at least 45 days before their planned distribution. Significantly, in a regulation relating to the very controversy presented here the regulations of the Health Care Financing Administration permit the denial of benefits not rendered "(1) Directly by the organization; or (2) Through arrangements made by the organization” except when dealing with emergency and urgently needed services (42 CFR 417.448).
At the State level pursuant to section 4406 of the Public Health Law the contract between an HMO and an enrollee is subject to regulation by the Superintendent of Insurance as if it were a health insurance subscriber contract. Consistent therewith section 52.42 (a) (1) of the regulations of the Insurance Department provides that HMO contracts must be filed with and approved by the Superintendent of Insurance (11 NYCRR 52.42 [a] [1]).
What evolves from this regulatory scheme is that the contract in use by Elderplan is subject to government approval. *893 Thus there is a basis to find that the very contractual provisions Lutheran seeks to undermine have received government sanction. Lutheran has not set forth any reason why in the face of such governmental sanction the Elderplan contract should be set aside. While obviously the fact that the contract has a governmental imprimatur does not by itself shield it from examination, it is protected by the concept of freedom to contract (Allhusen v Caristo Constr. Corp., 303 NY 446, 452). In other words Lutheran has not established that Venturini and Elderplan did not act freely and voluntarily in entering into their contract. It would also appear that to the extent the HMO contract and the concept it embodies are inadequate, and provide less coverage than Medicare, rectification must come from the Legislature or regulatory agencies involved.
It follows from the conclusion that the contract and its nonassignment provision are valid that the motion by Elder-plan to dismiss based upon documentary evidence must be granted. Two final observations are in order. First, while the parties have not raised the issue, this court would appear to be an inappropriate forum, since the controversy should have been brought in Federal court. Second, while the outcome at bar may seem harsh vis-a-vis Lutheran, as an entity in the health care business it was in the best position from the onset of Venturini’s admission to be aware of an HMO’s involvement and the need to abide by its requirements. In any event the motion is granted and the action dismissed.