OPINION OF THE COURT
Lucy Billings, J.
*937 Plaintiff, a podiatrist, sues defendant health services corporation to recover $73,825 for medical treatment provided to seven patients from October 26, 1996 to June 2, 1997. Plaintiff’s standing to sue is grounded upon his patients’ purported assignment of billing rights under their health insurance contracts with defendant. He argues that defendant did not timely reject his claims or articulate a basis for questioning them, in violation of the New York Insurance Law and defendant’s own and industry standards for processing claims. Plaintiff seeks summary judgment based on defendant’s breach of its contracts with the policyholders. Defendant, citing a non-assignment clause in defendant’s contracts, challenges plaintiff’s standing to sue and insists defendant timely and properly notified plaintiff of its objection to his payment demands.
I. THE SUMMARY JUDGMENT STANDARD
The court may grant summary judgment upon a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence sufficient to eliminate material issues of fact. (CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) When the party seeking summary judgment demonstrates entitlement to judgment the burden shifts to the opponent to “rebut that prima facie showing” (Bethlehem Steel Corp. v Solow, 51 NY2d 870, 872 [1980]), by producing “evidentiary proof in admissible form sufficient to require a trial of material questions of fact.” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; accord, GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 968 [1985].)
II. THE NONASSIGNMENT CLAUSE
Plaintiffs bills for services to his patients contain the following provision: “insured’s or authorized person’s signature I authorize payment of medical benefits to the undersigned physician or supplier for services described below.” (Affidavit of Janice G. Roven, exhibit D.) Following this text, in a space for the patient’s signature, is typed “signature on file.” {Ibid.)
Defendant maintains these provisions are insufficient to establish that the patients assigned their benefit rights to plaintiff. Alternatively, defendant argues that its contracts with policyholders bar assignment of benefit rights, entitling defendant to summary judgment. Defendant further claims the bills do not contain sufficient information to establish the alleged services were performed and are covered by the available benefits.
*938 Neither party offers the specific contracts held, by the seven patients. Defendant submits generic versions of its contracts, which contain the following clause:
“This Contract Is Not Assignable
“Only Covered Persons can receive the benefits provided under this Contract or payment. Therefore, except as otherwise specifically set forth elsewhere in this Contract, any attempt to assign benefits or payments will be void unless authorized by us in writing, and no benefits, payments or rights may be claimed under any attempted assignment.” (Affidavit of Rose Duverseau, exhibit B4, art XVII, E; exhibit B5, art XVIII, E; exhibit B7, art XVII, E.)
The contracts do not make any other provision relating to assignment of benefits or payments. Neither does plaintiff offer any evidence that defendant executed a written authorization to any of the seven patients to assign their benefits. On the other hand, defendant fails to show that the contracts carried by each of the patients contained a clause prohibiting assignment, although plaintiff does not show that any of the patients’ contracts lack this clause. If the assignments are proved and the clause is enforceable, a trial is necessary to determine which, if any, of the contracts contain nonassignment clauses.
A. THE EVIDENCE OF THE ASSIGNMENTS
“No particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned.” (Leon v Martinez, 84 NY2d 83, 88 [1994]; see, General Motors Acceptance Corp. v Albany Water Bd., 187 AD2d 894, 896 [3d Dept 1992]; Gingold v State Farm Ins. Co., 168 Misc 2d 62, 64 [Civ Ct, Queens County 1996].) Health care services provided to an insured form the basis for a transaction vesting in the provider a right to obtain the health insurance policy’s benefits. The language of plaintiff’s form evinces the signer’s intent to assign benefit rights to plaintiff. “It is a routine practice for * * * health care providers to take assignments to protect their bills for services rendered, and this is manifestly what was intended here.” (Gingold v State Farm Ins. Co., supra, at 64.)
No signature of any of the patients, however, appears on the bills submitted in this action. Nor does plaintiff indicate any agreement with his patients to use their signatures to evince their intent to execute assignments. Absent this evidence es *939 sential to plaintiffs prima facie case, the court must deny the motion “regardless of the insufficiency of the opposing papers.” (McCue v Battaglia, 211 AD2d 625, 626 [2d Dept 1995].)
Plaintiff still may be able to prove at trial that his patients assigned their benefit rights to him. Even if he proves the assignments, however, if the patients’ health benefits contracts contain a clause prohibiting assignment, and the clause is enforceable, then defendant would be entitled to judgment as a matter of law. (CPLR 3212 [b].)
B. ENFORCEMENT OF THE CLAUSE PROHIBITING ASSIGNMENT
The nonassignment clause in defendant’s generic contracts is sufficiently clear to prohibit the assignment on which plaintiff bases his claims under the patients’ insurance policies. (Spinex Labs. v Empire Blue Cross & Blue Shield, 212 AD2d 906 [3d Dept 1995]; Sullivan v International Fid. Ins. Co., 96 AD2d 555, 556 [2d Dept 1983]; Lutheran Med. Ctr. v Elderplan, Inc., 155 Misc 2d 887, 891-892 [Civ Ct, Kings County 1992]; Renfrew Ctr. v Blue Cross & Blue Shield, 1997 WL 204309, *3, 1997 US Dist LEXIS 5088, *7 [ND NY, Apr. 10, 1997, Pooler, J.].). Thus plaintiff lacks standing to sue defendant wherever the patient’s policy contains the nonassignment clause, unless its enforcement is barred by law or public policy.
1. Applicability of the Uniform Commercial Code
Where applicable, Uniform Commercial Code § 9-318 (4) bars enforcement of nonassignment clauses: “A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor’s consent to such assignment or security interest.” (See also, General Obligations Law § 13-101; UCC 2-210 [2], [3].) The UCC 9-318 (4) bar applies in a variety of contexts where a transaction is secured. (UCC 9-102.) Section 9-318 (4) may apply where either the contract prohibiting assignment is secured (e.g., Quantum Corporate Funding v Fidelity & Deposit Co., 258 AD2d 376 [1st Dept 1999]), or a derivative contract assigning rights or interests under the first contract is secured. (E.g., Aetna Cas. & Sur. Co. v Bedford-Stuyvesant Restoration Constr. Corp., 90 AD2d 474, 475 [1st Dept 1982]; Wonsey v Life Ins. Co., 32 F Supp 2d 939, 941, n 4 [ED Mich 1998].) The bar does not apply to an assignment of rights or interests under a contract prohibiting assignment where neither transaction is secured. *940 (E.g., Macklowe v 42nd St. Dev. Corp., 170 AD2d 388, 389 [1st Dept 1991].)
Although the court has found no authority that assignment of the right to health insurance benefits in exchange for medical services is a secured transaction within the scope of UCC article 9, that right could be construed as collateral for the services rendered. The law does recognize circumstances where medical services may be consumer credit transactions, which may be secured by an interest in insurance benefits. (State of New York v Monteleone, 138 AD2d 821, 822 [3d Dept 1988]; Neurological Servs. v Allstate Ins. Co., 181 Misc 2d 98 [Civ Ct, Bronx County].) An assignment intended to grant a security interest in insurance benefits thus may constitute a secured transaction governed by UCC article 9. (See, UCC 9-102; Wonsey v Life Ins. Co., 32 F Supp 2d, supra, at 941, n 4.)
Assuming plaintiffs transactions with his patients otherwise would fall under article 9, it nevertheless does not apply “to a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds (Section 9-306).” (UCC 9-104 [g].) Even if plaintiff, as assignee of an interest or claim under his patients’ insurance policies, entered article 9 transactions, UCC 9-318 (4) does not nullify a nonassignment clause in the policies, unless the benefits qualify as “proceeds” within the meaning of UCC 9-104 (g) and 9-306 (1). (Wonsey v Life Ins. Co., 32 F Supp 2d, supra, at 941, 942, n 6.)
Section 9-306 (1) defines “proceeds” as “whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.” Insurance payments that article 9 contemplates as “proceeds” are benefits payable due to the loss or damage of insured collateral. (Badillo v Tower Ins. Co., 92 NY2d 790, 794-795 [1999]; Bank of India v Weg & Myers, 257 AD2d 183; PPG Indus. v Hartford Fire Ins. Co., 531 F2d 58, 60-61 [2d Cir 1976].) Payment of health insurance benefits previously assigned in exchange for medical services does not constitute the “disposition of collateral.” (UCC 9-306 [1].) Since the collateral is the insurance payments to begin with, they are not received from the “disposition of collateral.” (Ibid.; see, Wonsey v Life Ins. Co., 32 F Supp 2d, supra, at 941-942, n 6.)
The same result ensues if the initial insurance contract containing the nonassignment clause is considered a secured transaction, in that the policyholders’ premium payments *941 under the contract effect a security interest in the insurance benefits. In exchange for the premiums, the contract transfers “an interest or claim” under the insurance policy to the policyholder, invoking the UCC 1-104 (g) exclusion. Here, the collateral is the premiums, and the insurance payments are received in exchange for, but not from the “disposition of,” that collateral. (UCC 9-306 [1].) Therefore, even if either of the transactions involved in this action constitutes a secured transaction, plaintiff may not invoke UCC 9-318 (4) to nullify a non-assignment clause in the insurance policies. (See, Spinex Labs. v Empire Blue Cross & Blue Shield, 212 AD2d 906, supra; Wonsey v Life Ins. Co., 32 F Supp 2d, supra, at 942.)
2. Public Policy
Public policy concerns are consistent with this result. Enforcement of nonassignment clauses, in leaving assignability of benefits to the contracting parties, and allowing “the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve,” serves the interests of health care cost containment. (Davidowitz v Delta Dental Plan, 946 F2d 1476, 1481 [9th Cir 1991]; see also, Renfrew Ctr. v Blue Cross & Blue Shield, 1997 WL 204309, *3,1997 US Dist LEXIS 5088, *7, supra; St. Francis Regional Med. Ctr. v Blue Cross & Blue Shield, 49 F3d 1460, 1464, 1466-1468 [10th Cir 1995]; Washington Hosp. Ctr. Corp. v Group Hospitalization & Med. Servs., 758 F Supp 750, 753-754 [D DC 1991].)
These concerns are particularly salient here, where defendant claims plaintiff is not a participating provider in the patients’ plans, and defendant’s contracts provide:
“Who Receives Payment under this Contract
“Payments under this Contract for services provided * * * by In-Network Providers will be made by us directly to the * * * In-Network Provider. If the Covered Person receives services * * * from an Out-of Network Provider for services covered under this Contract, we reserve the right to pay either the Covered Person * * * or other provider.” (Affidavit of Rose Duverseau, exhibit B4, art XV, E; exhibit B5, art XVI, E; exhibit B7, art XV, E.)
Such group policies give patients a strong incentive to use participating, “in-network” providers, where the insurer typically reimburses a greater percentage of the patients’ costs than for a nonparticipating, “out-of-network” provider. (See, Washington Hosp. Ctr. Corp. v Group Hospitalization & Med. Servs., 758 F Supp, supra, at 751, 754.) Here the insurer also *942 pays in-network providers directly, but out-of-network providers only when authorized, on an individual basis, at the insurer’s discretion. (See, Renfrew Ctr. v Blue Cross & Blue Shield, 1997 WL 204309, *3, 1997 US Dist LEXIS 5088, *7, supra.)
Under such a plan, the insurer, the patients, and the in-network providers gain various benefits. The insurer can attract subscribers with the promise of greater coverage and of payments to any in-network provider on the patients’ behalf, without their involvement. The insurer also can attract providers to the network with the promise of quick, direct, and certain payments. In exchange for these advantages, the insurer can reduce costs, through lower reimbursement levels or other cost constraints accepted by the in-network providers, and through administrative savings from a more streamlined payment system.
When patients assign their rights to coverage and to payment under their insurance contracts, the payments that would be made either to the patients directly or to an in-network provider will be made to an out-of-network provider instead. The out-of-network provider obtains the in-network provider’s advantages without subjecting himself to the network’s constraints — leaving him little incentive to join the network. Permitting these assignments of the subscribers’ rights, in the face of a nonassignment clause, thus undermines the network and its cost containment mechanisms. (Supra, 1997 WL, at *3-4, 1997 US Dist LEXIS, at *7-8; St. Francis Regional Med. Ctr. v Blue Cross & Blue Shield, 49 F3d, supra, at 1466-1468; Washington Hosp. Ctr. Corp. v Group Hospitalization & Med. Servs., 758 F Supp, supra, at 754.)
Plaintiff, however, assuming he is in fact an out-of-network provider, may be seeking the same reimbursement paid to in-network providers, without charging his patients the difference between that level and his private rate. Nonetheless, he still gains the advantages of direct recovery from the insurer, without the delay and risk in seeking reimbursement from patients. Denying the insurer the discretion, as provided under the insurance contract, to refuse authorization and payment to an out-of-network provider, even payment at the in-network level, also frustrates administrative savings. The right to refuse allows the insurer to limit the providers it must deal with and saves it the task of reviewing each unknown provider.
Hence, neither any applicable law nor any recognized public policy reasons bars enforcement of the nonassignment clause *943 in defendant’s insurance contracts, at least wherever the policy contains the provision, and defendant has not waived enforcement.
C. WAIVER
Insurers may, of course, elect to waive nonassignment clauses in their contracts. (Gingold v State Farm Ins. Co., 168 Misc 2d 62, 64, supra.) Circumstances other than an affirmative election also may constitute a party’s waiver of rights or defenses under a contract. Here, plaintiff alleges he has been “an approved Empire Blue Cross provider for over eleven years.” (Affidavit of Craig Brandoff, ¶ 3, exhibit C to Janice G. Roven affidavit.) He also urges that defendant routinely pays benefits based on documentation analogous to what he supplied for the services at issue here. Although neither party establishes or admits prior payments to plaintiff notwithstanding the alleged nonassignment clauses and billing deficiencies, at trial plaintiff may be able to prove these defenses were waived or modified by a course of business dealings. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 402-403 [1957]; University Mews Assocs. v Jeanmarie, 122 Misc 2d 434, 439-440 [Sup Ct, NY County 1983].)
III. CONCLUSION
To recapitulate, the court denies plaintiffs motion for summary judgment because he has not established that his patients assigned their benefit rights to him. The court also denies summary judgment to defendant because, even though its policies may contain an enforceable clause prohibiting any assignments that may be proved, defendant has not established that the policies under which rights were assigned in this case contain that clause. If defendant were to prove the clause, and plaintiff does not prove a waiver, that clause would deprive plaintiff of standing, and defendant would be entitled to judgment as a matter of law. (CPLR 3212 [b].)
[Portions of opinion omitted for purposes of publication.]